[Cite as *State v. Jordan*, 2013-Ohio-4172.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

    v.

MICHAEL D. JORDAN

    Appellant

C.A. No.    26598

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 12 03 0590 (A)

DECISION AND JOURNAL ENTRY

Dated: September 25, 2013

CARR, Judge.

{¶1} Appellant Michael Jordan appeals his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Minutes after Jordan helped Sharda Elmore load two large boxed flat screen televisions onto a shopping cart in WalMart, Elmore pushed the cart out of the store without paying for the televisions as Jordan engaged the store's elderly greeter in conversation. Jordan was later indicted on one count of theft of property worth $1000.00 or more but less than $7500.00, a felony of the fifth degree. He pleaded not guilty and the matter was tried to a jury that found him guilty. The trial court sentenced him to 12 months in prison. Jordan appealed and raises four assignments of error for review. This Court consolidates some assignments of error and rearranges others to facilitate review.

II.

## ASSIGNMENT OF ERROR I

THE STATE OF OHIO FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT WHEN VIEWED BY THE MANIFEST WEIGHT OF THE EVIDENCE THAT MICHAEL D. JORDAN EITHER PARTICIPATED OR WAS AN ACCOMPLICE IN THE THEFT AT THE WALMART STORE; THERE IS INSUFFICIENT EVIDENCE TO SUPPORT MR. JORDAN'S CONVICTION OF THEFT AND THUS APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED ON INSUFFICIENT EVIDENCE AS PERTAINS TO THE FINDING THAT HE COMMITTED THEFT. THE COURT ERRED IN OVERRULING MR. JORDAN'S RULE 29 MOTION FOR ACQUITTAL.

## ASSIGNMENT OF ERROR II

THE COURT ERRED IN DENYING DEFENDANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL ON THIS CHARGE.

{¶3} Jordan argues that his conviction was not supported by sufficient evidence, that the trial court erred by denying his motions for acquittal pursuant to Crim.R. 29, and that his conviction was against the manifest weight of the evidence. This Court disagrees.

{¶4} Jordan was charged with theft in violation of R.C. 2913.02(A)(1) which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" Pursuant to R.C. 2901.22(A): "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶5}** "Deprive" means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C). An "owner" is "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." R.C. 2913.01(D).

**{¶6}** Theft from a retail establishment is completed not only upon the defendant's leaving the premises with the merchandise. *State v. Cadle*, 9th Dist. Summit No. 24064, 2008-Ohio-3639, ¶ 7. This Court, along with several others, has recognized that "[t]he state need only prove that appellant exerted control over the merchandise with the intent to deprive the store owner of its property, regardless of whether [the defendant] was still in the store. The slightest act of removal or hiding of property, coupled with the requisite intent, is a sufficient asportation in the eyes of the law." (Alteration in original.) *Id.*, quoting *State v. Arthur*, 4th Dist. Scioto No. 01CA2818, 2002-Ohio-3764, ¶ 17, and citing *State v. McGhee*, 6th Dist. Lucas No. L-06-1210, 2007-Ohio-6527, ¶ 23; *State v. Bean*, 2d Dist. Montgomery Nos. 22035, 22036, 2007-Ohio-6132, ¶ 19-20; *State v. Peak*, 11th Dist. Lake No. 2004-L-124, 2005-Ohio-6422, ¶ 33-34; *State v. Randazzo*, 8th Dist. Cuyahoga No. 79667, 2002-Ohio-2250, ¶51; *State v. Dozier*, 2d Dist. Montgomery No. 11398, 1989 WL 150805 (Dec. 12, 1989). The intent to deprive the owner of the

property may be established by circumstantial evidence. *Cadle* at ¶ 7, citing *Arthur* at ¶ 17.

**{¶7}** The jury was further instructed that it could consider whether Jordan acted in complicity with another in committing the theft, i.e., whether Jordan aided or abetted another in committing the theft. *See* R.C. 2923.03(A)(2). A person who is guilty of complicity is guilty as if he were the principal offender. R.C. 2923.03(F). A criminal defendant may be charged with complicity pursuant to the complicity statute or simply in terms of the principal offense. *Id.*

Sufficiency of the evidence

**{¶8}** Crim.R. 29 provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

**{¶9}** "Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 113, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Diar* at ¶ 113, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979).

**{¶10}** Deputy Nancy Mundy of the Summit County Sheriff's Department testified that one of her duties includes recording telephone calls made by inmates housed in the county jail. She explained the method used to ensure proper identification of all inmate calls. She further

explained that all calls are recorded for purposes of safety, security, and collecting information; and that inmates are notified at the beginning of every call that their call is being recorded. Deputy Mundy authenticated a compact disc of telephone calls made by Jordan from jail, and parts of two calls were played for the jury. In one call, Jordan explained to a child on the other end of the phone call that he was in jail because he was bad. In the other call, he admitted helping Elmore load televisions onto a shopping cart and later picking Elmore up in his car after Elmore ran away from the store after being stopped by a WalMart asset protection associate. Jordan told the woman on the other end of the phone that he had gone through one of the store's checkout registers and paid for a Sprite and a Take Five candy bar before being informed by store security that Elmore had attempted to pay for the televisions with a fraudulent credit card.

{¶11} Chad Gibson testified that he was working as an asset protection associate at the Macedonia, Ohio, WalMart around noon on February 15, 2012, when he noticed three men, including Jordan, enter the store and walk to the electronics department. Mr. Gibson, who was wearing street clothes, followed and observed the men based on his suspicions that they may be shoplifters. He testified that he saw Jordan help Elmore lift a 42-inch and a 46-inch television onto a shopping cart. Mr. Gibson went to the next aisle and waited for the two men to leave the area. After hearing some muffled sounds, Mr. Gibson watched Jordan join up with the third man, Yushon White, and walk down an aisle toward the front of the store. He watched Elmore push the cart with the televisions down another aisle towards the front of the store. As all three men reached the front of the store near the exit, Mr. Gibson saw Jordan engage the elderly store greeter in conversation and direct his attention to a display so that his back remained to the exit. Mr. Gibson then saw Elmore push the cart with the television sets out the store exit door. Mr. Gibson testified that he ran after Elmore, who abandoned the shopping cart with the televisions

on the sidewalk outside the store. He testified that Elmore fled the scene on foot. Mr. Gibson asked to speak to Jordan and White, who had also exited the store, but Jordan responded, "Who me?" and "Not me." Jordan and White walked to a car in the parking lot and drove away.

{¶12} Mr. Gibson testified that he downloaded store surveillance video footage from February 15, 2012, to a DVD. The State played the DVD for the jury. The video showed Jordan and White entering the store together at 11:57 a.m. and walking to the electronics department. There was no camera footage of Jordan helping Elmore load televisions onto a cart because no cameras were directed to that specific area, but Mr. Gibson testified that he personally observed that. Mr. Gibson testified that Jordan and Elmore were in the electronics area together at 12:02 p.m. The video footage showed Jordan and Elmore standing together in electronics and talking as Elmore held onto a shopping cart with televisions on it. The video further showed Jordan and White walking toward the front of the store via one aisle, as Elmore pushed the cart toward the front of the store via another aisle at 12:04 p.m. At 12:05 p.m. on the video, Elmore was seen walking towards the general merchandise exit as White walked behind him. At 12:06 p.m. on the video, Jordan was seen engaging the elderly store greeter in conversation and directing him down a side aisle away from the exit to a product display, as White stood at the greeter's back, turning to watch as Elmore walked behind the greeter and pushed the cart with the televisions out the exit door. The video further showed Mr. Gibson abandoning his own shopping cart and running after Elmore. Jordan was then seen walking out of the store. There is no video footage showing that Jordan stopped at any checkout register to pay for any item. Video footage from outside the store and in the parking lot showed Elmore running away through the parking lot as Jordan and White walked casually to a car. Mr. Gibson was then seen pushing the cart with the televisions back inside the store.

{¶13} Mr. Gibson testified that neither Elmore, nor Jordan, nor White ever went through any checkout line to pay for the televisions. He further testified that none of the three men had permission to take the televisions without paying for them. Nor did any of the three men make any attempt after leaving the store to reenter and pay for the televisions.

{¶14} Mr. Gibson authenticated a WalMart training receipt, i.e., an invalid receipt used by the store to obtain the value of items stolen from the store. The receipt reflected the value of the two televisions at issue in this incident. The Vizio M420SV television in Elmore's cart had a value of $698.00, while the 46-inch Samsung television had a value of $1098.00, for a total value of $1796.00.

{¶15} Detective Donavin Paquette of the Macedonia police department testified that around noon on February 15, 2012, he responded to a call from WalMart loss prevention about a theft in progress. He testified that the dispatcher advised him that three suspects exited the WalMart, and that two of them drove away toward state route 82, north of the store, in a maroon Ford Fusion with Florida license plates. Within a minute, Detective Paquette initiated a traffic stop of a maroon Ford Fusion with Florida license plates less than one quarter of a mile from the store. He confirmed the identities of the now-three occupants of the car: Jordan was driving, White was the front seat passenger, and Elmore was the back seat passenger.

{¶16} In investigating the incident, Detective Paquette interviewed Mr. Gibson, reviewed the store security video, and attempted to interview Jordan and Elmore. Based on his investigation, and considering the interaction of Jordan and Elmore in WalMart, Elmore's flight from the scene, Jordan's and White's refusal to speak with the loss prevention associate at WalMart, and Elmore's occupancy in Jordan's car after the incident within a short distance from

the store, the detective charged Jordan and Elmore with theft. When Detective Paquette testified, he was not aware of the disposition of Elmore's case.

{¶17} Jordan moved for a judgment of acquittal at the close of the State's case in chief, and the trial court denied the motion. He then rested without presenting any evidence and renewed his Crim.R. 29 motion, which the court denied.

{¶18} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found that the essential elements of the charge of complicity to commit theft were proved beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The State presented evidence that Jordan assisted Elmore in loading television sets onto a shopping cart at WalMart. The two then had a short conversation before leaving the electronics department via separate aisles and meeting again near the store exit. Mr. Gibson's testimony that Jordan distracted the store greeter near the exit as Elmore pushed the shopping cart out of the store was corroborated by store security video. Accordingly, the State presented sufficient evidence of the crime of theft.

Manifest weight of the evidence

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

> Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, at ¶ 5. This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶19} Jordan did not present a case in chief and he did not cross-examine Deputy Mundy.

{¶20} Mr. Gibson conceded that it is not unusual for people to help one another lift heavy items like televisions onto shopping carts. Mr. Gibson estimated that the televisions at issue were between thirty and fifty pounds each and the boxes measured two feet by three feet and three feet by four feet. He further conceded that he personally could not see what Jordan and Elmore were doing in the next aisle over from where Mr. Gibson positioned himself after Jordan and Elmore loaded the televisions, although the store security video captured the two talking together. Mr. Gibson could not hear their conversation and, therefore, did not hear the two making any plans to steal the televisions.

{¶21} A thorough review of the record indicates that this is not the exceptional case where the evidence weighs heavily in favor of Jordan. The weight of the evidence supports the conclusion that he assisted Elmore's theft of the televisions. The evidence demonstrated that Jordan helped Elmore load the televisions onto a shopping cart, and that he distracted the store greeter as Elmore pushed the cart out the exit. Jordan abandoned the televisions on the sidewalk outside the store after being confronted by Mr. Gibson. Jordan refused to speak with Mr. Gibson and walked to a car. Within a minute of Jordan's leaving the store parking lot with only White, the police stopped Jordan's car. By that time, Jordan had picked up Elmore after his flight from the scene, evidencing their relationship and raising the reasonable inference that the two had

planned to work together to steal the televisions. Accordingly, Jordan's conviction for theft is not against the manifest weight of the evidence.

{¶22} Jordan's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

THE COURT ERRED IN NOT CHARGING THE JURY ON A LESSER INCLUDED OFFENSE OF ATTEMPTED THEFT AND SUCH FAILURE IS PLAIN ERROR.

{¶23} Jordan argues that the trial court committed plain error by failing to instruct the jury on the lesser included offense of attempted theft. This Court disagrees.

{¶24} This Court has long held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention[]" at a time when the trial court might have corrected the error. *State v. Dent*, 9th Dist. Summit No. 20907, 2002-Ohio-4522, ¶ 6. "[F]orfeiture is a failure to preserve an objection[.] * * * [A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B)." (Internal citations omitted.) *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 12. This Court may not reverse the judgment of the trial court on the basis of plain error unless Jordan has established that the outcome of the trial clearly would have been different but for the

alleged error. *State v. Kobelka*, 9th Dist. Lorain No. 01CA007808, 2001-Ohio-1723, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996).

{¶25} R.C. 2945.74 enunciates the lesser included offense doctrine and states: "The jury may find the defendant not guilty of the offense charged, but guilty of an attempt to commit it if such attempt is an offense at law. When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense." *See also* Crim.R. 31(C).

{¶26} The Ohio Supreme Court has enunciated the following test:

> The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 13. The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense. *State v. Kidder*, 32 Ohio St.3d 279, 281 (1987). The second tier looks to the evidence in a particular case and determines whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, ¶ 11. Only in the second tier of the analysis do the facts of a particular case become relevant.

*State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, ¶ 6.

{¶27} Jordan argues that the trial court erred by failing to instruct on the lesser included offense of attempted theft. Attempt crimes constitute lesser offenses. *See State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 9. This Court has written that, "if during the course of trial the defendant presents sufficient evidence that his conduct was unsuccessful in constituting the indicted offense, an instruction to the jury on attempt would be proper." *Id.*, quoting *State v. Deem*, 40 Ohio St.3d 205, 208 (1988).

{¶28} Jordan argues that the evidence established that his conduct, at most, rose to the level of attempted theft because there was no evidence that he deprived, as that term is defined, WalMart of the televisions. Jordan misunderstands the essential elements of the crime of theft. Pursuant to R.C. 2913.02(A)(1), a defendant need only have "purpose" to deprive the owner of property; he need not actually permanently withhold or dispose of the property. The evidence established that Jordan helped Elmore load the televisions onto a cart and then distracted the store greeter to allow Elmore to leave the store with the televisions without paying for them. Accordingly, the evidence established that Jordan acted with the requisite purpose to deprive WalMart of its property, i.e., appropriate the televisions. Moreover, Elmore left the physical premises of the store with the televisions without paying for them and without any indication that he would return to pay for them. Instead, he fled when Mr. Gibson attempted to question him. Jordan, too, left the premises without indicating that he would return to the store to pay for the televisions. Jordan's theft was completed upon Elmore's moving the televisions throughout the store with the intent to deprive WalMart of that property. *Cadle* at ¶ 7; *see also Peak*, 2005-Ohio-6422, at ¶ 34 ("The law does not require the store to wait until a defendant leaves the premises with merchandise to apprehend a suspect for shoplifting."). Under these circumstances, a jury could not reasonably find Jordan not guilty of theft but guilty of the lesser offense of attempted theft. Jordan's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION BY SENTENCING MR. JORDAN TO A MAXIMUM SENTENCE. THIS SENTENCE WAS A GREAT DISPARITY OF THE SENTENCE GIVEN THE CO-DEFENDANT IN THIS CASE.

{¶29} Jordan argues that the trial court abused its discretion by sentencing him to the maximum term of 12 months because it did not sufficiently consider (1) the statutory purposes

and principles of sentencing, (2) the statutory seriousness and recidivism factors, and (3) the disparity between Jordan's and Elmore's sentences. This Court disagrees.

{¶30} Jordan does not argue that the trial court did not consider the statutory factors in R.C. 2929.11(A) (regarding the purposes of felony sentencing), R.C. 2929.11(B) (requiring consistency in "sentences imposed for similar crimes committed by similar offenders"), and R.C. 2929.12 (regarding seriousness of the conduct and likelihood of recidivism). Instead, he effectively argues that the court's findings were "not supported in sound discretion," i.e., that the court's application of those factors to the facts was unreasonable. This Court continues to recognize that a trial court, after proper adherence to applicable rules and statutes, retains discretion in the imposition of sentences. *State v. Weems*, 9th Dist. Summit No. 26532, 2013-Ohio-2673, ¶ 18-19.

{¶31} Jordan's argument is not supported by the record. First, the trial court proceeded directly to sentencing after the jury found Jordan guilty upon defense counsel's assertion that a presentence investigation report was not necessary and upon Jordan's assertion that he wished to immediately proceed to sentencing. Accordingly, Jordan effectively requested that the trial court proceed to sentencing in the absence of additional information that might have affected the trial court's consideration of the relevant statutory factors. He cannot now be heard to complain that additional information might have compelled the trial court to impose a less severe sanction.

{¶32} Second, defense counsel did not challenge the State's recitation of Jordan's criminal history, including 13 prior felony theft convictions; 6 misdemeanor theft convictions; numerous pending felonies, including theft charges, in other jurisdictions; and numerous prior incarcerations in both state and federal prisons. Defense counsel argued that probation for Jordan was appropriate given that Elmore only received probation for his role in this theft. She

conceded, however, that she did not know the details of Elmore's criminal history. Jordan himself told the court during sentencing that "My past speaks for itself[.]"

{¶33} Based on the circumstances of Jordan's conduct in the instant case, coupled with his criminal history and apparent complacency with regard to that history, the trial court found that the maximum sentence was necessary to protect the public and that it would not place an unnecessary burden on state and local resources. In addition, the trial court expressly stated that it was not imposing a 12-month sentence as a penalty for Jordan's exercising his right to trial, but rather that the sentence was "reflective of Mr. Jordan's criminal history and also for his inability to take responsibility for any of these actions." This Court cannot conclude that the trial court did not sufficiently consider the appropriate statutory factors or that its findings were unreasonable.

{¶34} Moreover, there is nothing in the record to indicate that the court imposed a disparate sentence. Jordan's argument at sentencing that Elmore's actions were worse than his because he was not the one who pushed the televisions out of the store ignores the legal principle that a complicitor is equally as culpable as a principal offender. R.C. 2923.03(F). In addition, the record is devoid of evidence of the specifics of Elmore's criminal history. Accordingly, it was not possible for the trial court to determine whether Jordan and Elmore were similar offenders. For the above reasons, we conclude that the trial court did not abuse its discretion by imposing the maximum sentence in this case. Jordan's third assignment of error is overruled.

III.

{¶35} Jordan's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.