**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No.    25756 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No.    12-CR-885 |
| v. | : | |
| | : | |
| JAMES EDWARD PATTON | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# **O P I N I O N**

Rendered on the 16th day of May, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

JOSHUA S. CARTER, Atty. Reg. No. 0084925, 19 Caughey Street, Unit 2, Waltham, MA 02451
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}     James Edward Patton appeals from his conviction and sentence on one count of attempted misuse of a credit card, a fifth-degree felony.

**{¶ 2}** Patton advances two assignments of error. First, he challenges the legal sufficiency and manifest weight of the evidence to sustain his conviction. Second, he claims the trial court abused its discretion in admitting into evidence photographs of him with celebrities.

**{¶ 3}** The present appeal stems from Patton's attempt to purchase a $500,000 engagement ring from Weber Jewelers. The State's evidence at trial established that Patton met a woman on the internet and began corresponding with her. They eventually decided to marry. Patton contacted Weber employee Jacquelyn Ullmer on December 20, 2011 about purchasing a six-to-eight-carat center-stone diamond engagement ring with large heart-shaped diamonds on each side. Patton told Ullmer he wanted the ring by Christmas Eve. Ullmer promptly located suitable stones and advised Patton that she needed a $100,000 deposit. Patton said he would wire the funds from his bank, Wells Fargo, to Weber's bank, PNC. Ullmer e-mailed Patton wiring instructions. In response, she received e-mailed pictures of Patton with celebrities Kenny Loggins and Neil Armstrong. Patton also told her that John Travolta would be attending his wedding.

**{¶ 4}** Ullmer did not receive the wire transfer as promised on December 21, 2011. By that time, Weber had secured the stones and was designing the ring. On December 22, 2011, Ullmer e-mailed Patton and told him the funds had not arrived and that she needed the deposit. She sent another e-mail later that day, advising him that the ring might not be ready in time if Weber did not receive a deposit soon. Patton sent an e-mail response, attaching what appeared to be a Wells Fargo document regarding a $100,000 wire transfer to PNC. But no transfer occurred.

**{¶ 5}** The following day, Patton and his soon-to-be fiancé visited the store to see the ring. During their visit, Weber representative Fred Weber reminded Patton that he needed to pay for the ring. Patton agreed. He explained that the money had been wired and that he had received a confirmation. Again, however, no funds were transferred and Weber did not receive payment. In

fact, Patton did not have nearly enough money in his Wells Fargo account to make the payment.

{¶ 6}    Patton became engaged to his fiancé on December 31, 2011 without the ring from Weber. Instead, Patton gave his fiancé a $5,000 ring from another jewelry store. He was able to purchase that ring only after his fiancé co-signed for credit. Patton nevertheless continued to promise her that she would receive the ring from Weber. On Valentine's Day, he falsely told her he had the Weber ring in his possession. He stated that it needed to be repaired, so he temporarily had returned it to the store. He also talked to her about insuring the ring.

{¶ 7}    On February 17, 2012, Patton called Ullmer about the Weber ring. He stated that he still wanted it and wanted to pay the deposit. Patton told Ullmer he wanted to pay $92,000 using his Regions Bank debit card. He expressed concern, however, that the transaction might be declined due to the large dollar amount. As a result, he asked Ullmer to process the transaction "off line." Unlike an on-line transaction, which would result in immediate approval or disapproval, an off-line transaction would involve Weber capturing Patton's debit-card information and the dollar amount on its point-of-sale terminal but not seeking approval from the bank until later. Patton claimed to have spoken with a Regions Bank customer-service representative, and he provided Ullmer with a six-digit authorization code. Regions Bank had no record of Patton speaking to a representative, however, and the authorization code was fictitious.

{¶ 8}    In any event, Ullmer processed the transaction off line using the code supplied by Patton. Weber's credit-card terminal generated a $92,000 receipt. Ullmer later received notice, however, that Regions Bank had declined the transaction. Weber never received any money, and Patton never obtained possession of the ring. The checking account linked to his debit card had been closed by Regions Bank in December 2010 after being overdrawn by $467.84. The debit card

itself had been de-activated in October 2010. Based on the evidence presented, a jury found Patton guilty of attempted misuse of a credit card. The trial court imposed a twelve-month prison sentence. This appeal followed.

{¶ 9} In his first assignment of error, Patton challenges the legal sufficiency and manifest weight of the State's evidence to sustain his conviction. He makes an identical argument with regard to weight and sufficiency. Specifically, he asserts that his attempted use of the debit card to make a down payment, even if successful, would not have resulted in him taking possession of the engagement ring. Because he still would have owed more than $400,000, Patton reasons that there was no possibility he would have obtained the ring. Under these circumstances, he insists that it was impossible for him to commit the offense of misuse of a credit card and, therefore, that his attempt conviction cannot stand.[1]

{¶ 10} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant

---

[1] We note that Patton used a debit card whereas the statute under which he was convicted, R.C. 2913.21(B)(2), prohibits the misuse of a credit card. Significantly, however, the statutory definition of a "credit card" for purposes of R.C. 2913.21(B)(2) can include a debit card. *See* R.C. 2913.01(U) ("'Credit card' includes, but is not limited to, a card, code, device, or other means of access to a customer's account for the purpose of obtaining money, property, labor, or services on credit, or for initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine."); *State v. Gilbert*, 5th Dist. Ashland No. 09 COA 26, 2010-Ohio-2859 (holding that a debit card met the statutory definition of a credit card under R.C. 2913.01(U)). On appeal, Patton does not dispute that his debit card constituted a "credit card" for purposes of R.C. 2913.21(B)(2).

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 11}** Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 12}** With the foregoing standards in mind, we conclude that Patton's conviction is supported by legally sufficient evidence and is not against the manifest weight of the evidence. Patton was convicted of attempted misuse of a credit card in violation of R.C. 2913.21(B)(2) and R.C. 2923.02(A). The misuse statute provides that no person, with purpose to defraud, shall "[o]btain property or services by the use of a credit card, in one or more transactions, knowing or having reasonable cause to believe that the card has expired or been revoked, or was obtained, is retained, or is being used in violation of law[.]" R.C. 2913.21(B)(2). The attempt statute provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or

result in the offense. R.C. 2923.02(A).

{¶ 13} Here the record supports a finding that Patton purposely attempted to use a de-activated card linked to a closed checking account to purchase a $500,000 ring. In our view, the fact that he was attempting to make the first payment (i.e., a down payment) rather than the last payment did not prevent the State from obtaining a conviction for attempted misuse of a credit card. An attempt occurs when a defendant purposely performs any act constituting a substantial step in a course of conduct planned to culminate in the commission of a crime. *State v. Roark*, 2d Dist. Montgomery No. 23559, 2010-Ohio-2841, ¶ 30. Patton's effort to make a $92,000 payment with a de-activated card on a closed account constituted a substantial step toward obtaining property in violation of R.C. 2913.21(B)(2). Accordingly, the first assignment of error is overruled.

{¶ 14} In his second assignment of error, Patton claims the trial court abused its discretion in admitting into evidence the photographs of him with Kenny Loggins and Neil Armstrong. Patton argues that these pictures had no relevance to the charge against him. Alternatively, he contends any probative value was substantially outweighed by the danger of unfair prejudice.

{¶ 15} A trial court enjoys considerable discretion when balancing the probative value of evidence against the danger of unfair prejudice, and we will not disturb its determination absent an abuse of discretion. *State v. Thompson*, 2d Dist. Montgomery No. 22984, 2010-Ohio-1680, ¶ 151. We see no abuse of discretion here. The State was required to prove that Patton acted with the purpose to defraud. R.C. 2913.21(B)(2). Patton sent Ullmer the pictures at issue in response to an e-mail directing him to wire transfer $100,000 as a down payment on a $500,000 ring. The trial court reasonably concluded that the pictures were relevant to Patton's purpose to defraud, insofar as he may have been attempting "to create a misimpression to Weber Jewelry as to who they're

dealing with and his ability to make good on this purchase." (Tr. Vol. I at 72-73). The trial court noted that Patton may have been "propping himself up by associating himself with these famous people[.]" (*Id.* at 73). We agree. The record supports an inference that Patton depicted himself as a friend of the rich and famous to help persuade Ullmer he could pay for the ring when, in fact, he could not. This is precisely the argument the State made to the jury. (Tr. Vol. III at 438). The trial court did not abuse its discretion in finding the pictures admissible. The second assignment of error is overruled.

{¶ 16}   The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Kirsten A. Brandt
Joshua S. Carter
Hon. Dennis J. Langer