[Cite as *State v. Baumle*, 2015-Ohio-220.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  11-14-06

    v.

ABAGAIL L. BAUMLE,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Paulding County Common Pleas Court
Trial Court No. CR-13-587

**Judgment Affirmed**

Date of Decision:  January 26, 2015

APPEARANCES:

    *Timothy C. Holtsberry* **for Appellant**

    *Joseph R. Burkard*  **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Abagail L. Baumle ("Baumle"), appeals the June 4, 2014 judgment entry of sentence of the Paulding County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On November 15, 2013, the Paulding County Grand Jury indicted Baumle on one count of theft in violation of R.C. 2913.02(A)(1), (B)(2), a fifth-degree felony. (Doc. No. 1). The indictment alleged that on September 5, 2013 through September 24, 2013 Baumle purposely deprived the victim, Courtney Temple ("Temple"), of an item of property listed in R.C. 2913.71, a "credit/debit card," or exerted control over that property without Temple's consent. (*Id.*).

{¶3} On November 25, 2013, Baumle entered a not-guilty plea at arraignment. (Doc. No. 11).

{¶4} On February 25, 2014, Baumle waived her right to a trial by jury and a trial to the court was held on April 10, 2014. (Doc. Nos. 18, 19, 24). The trial court found Baumle guilty as to the count in the indictment and ordered a presentence investigation ("PSI"). (Doc. No. 24); (Apr. 10, 2014 Tr. at 51).

{¶5} On April 22, 2014, Baumle filed a "Motion for Dismissal" under Crim.R. 29, 47, and 48, arguing that there was insufficient evidence that she intended to permanently deprive Temple of her debit card. (Doc. No. 25). The trial court denied Baumle's motion on April 30, 2014. (Doc. No. 26).

{¶6} On June 2, 2014, the trial court sentenced Baumle to four years of community control. (June 4, 2014 JE, Doc. No. 29). Baumle's community control sanctions included: that she will serve 20-days in jail with work-release privileges; that she may not consume alcohol or controlled substances and enter any bars, taverns, or establishments that serve alcohol by the single serving; that she will be subject to random blood, breath, and urine screens; that she will pay court costs in this case; and that she will maintain employment during her term of community control. (*Id.*).

{¶7} Baumle filed her notice of appeal on July 3, 2014. (Doc. No. 31). Baumle raises three assignments of error for our review. We elect to address Baumle's first and second assignments of error together, followed by her third assignment of error.

### Assignment of Error No. I

**The trial court's finding of guilt for a violation of R.C. 2913.02(A)(1) for theft of a debit card is against the manifest weight of the evidence.**

### Assignment of Error No. II

**The trial court erred in overruling defendant's motion to dismiss pursuant to Criminal Rules 29, 47 and 48.**

{¶8} In her first and second assignments of error, Baumle argues that her conviction is against the manifest weight of the evidence and is not supported by sufficient evidence. In particular, Baumle argues that there is insufficient

evidence that she purposely deprived Temple of her debit card because Baumle replaced it in Temple's wallet after each time she used it. She also contends that there is insufficient evidence that Temple did not consent to Baumle's use of her debit card.

{¶9} As an initial matter, we note that Baumle argues in her second assignment of error that the trial court erred in overruling her "motion to dismiss." However, Baumle mischaracterizes her motion. Instead, because Baumle's motion was made after the presentation of evidence and requested the trial court to examine the evidence presented and dismiss the indictment since there was insufficient evidence that Baumle intended to permanently deprive Temple of her debit card, the motion was framed as, and treated as, a motion for acquittal under Crim.R. 29.[1] *See State v. Stout*, 3d Dist. Logan No. 8-06-12, 2006-Ohio-6089, ¶ 11 ("If a motion to dismiss requires examination of evidence beyond the face of the complaint, it must be presented as a motion for acquittal under Crim.R. 29 at the close of the state's case."), citing *State v. Varner*, 81 Ohio App.3d 85, 86 (9th Dist.1991). Nevertheless, Baumle's motion had no application in her bench trial. *See State v. Miller*, 3d Dist. Seneca No. 13-12-52, 2013-Ohio-3194, ¶ 27, fn. 3 ("'The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury.

---

[1] Although Baumle characterized her motion as a "motion to dismiss," we note that she stated that her arguments were being made under Crim.R. 29, 47, and 48. (*See* Doc. No. 25).

In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim.R. 29 motion at the close of all the evidence.'"), quoting *City of Dayton v. Rogers*, 60 Ohio St.2d 162, 163 (1979). Accordingly, we will treat Baumle's assignment of error as challenging the sufficiency of the evidence. *Id.*, citing *State v. Tatum*, 3d. Dist. Seneca No. 13-10-8, 2011-Ohio-3005, ¶ 43 and *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist.1996).

{¶10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505,

2011-Ohio-6267, ¶ 25 (1st Dist.).  *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{**¶11**} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses.  *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).  When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment."  *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{**¶12**} The criminal offense of theft is codified in R.C. 2913.02, which provides, in relevant part:  "No person, with purpose to deprive the owner of

property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."  R.C. 2913.02(A)(1).

{¶13} Prior to the start of trial, the parties stipulated that Baumle used Temple's debit card several times to receive $1,089.50.  (Apr. 10, 2014 Tr. at 6).  The parties also stipulated that State's Exhibits One and Two—photographs of Baumle using Temple's debit card and Temple's bank statement depicting the withdrawals—should be admitted into evidence without objection.  (*Id.*).

{¶14} At trial, the State called Chief Rodney Miller of the Payne Police Department ("Chief Miller") to testify.  Chief Miller testified that Temple came to "the office and reported that someone had used her ATM card at several different ATM machines that amounted to over $1,000."  (Apr. 10, 2014 Tr. at 10).  Based on Temple's report, Chief Miller testified that he began his investigation by contacting the banks that controlled the ATM machines at which the withdrawals were made and obtained photographs of the person, later identified as Baumle, who made the withdrawals.  (*Id.* at 11).  As a result of his investigation, he asked Baumle to come to the Payne Police Department for an interview.  (*Id.*).  He testified that Baumle told him that she used Temple's debit card "at several different machines to pay expenses" and that she did so without Temple's permission.  (*Id.* at 12).  Chief Miller identified State's Exhibit Three as the

statement Baumle provided to him in which Baumle also stated that she took Temple's debit card without her permission. (*Id.*); (State's Ex. 3). Chief Miller testified that Temple was "[n]ot surprised" that the photographs depicted Baumle as the person using her debit card. (Apr. 10, 2014 Tr. at 11). Baumle did not cross-examine Chief Miller. (*Id.* at 13).

{¶15} Next, Temple testified on behalf of the State. She testified that she and Baumle were friends since the sixth grade and that the two became roommates in July 2013. (*Id.* at 15). She testified that she did not give Baumle permission to use her debit card and did not tell Baumle her PIN number. (*Id.* at 16-17, 20-21). According to Temple, Baumle never asked Temple to borrow money from her during the time that Baumle made the withdrawals using Temple's debit card. (*Id.* at 18).

{¶16} On cross-examination, Temple stated that she did not tell Baumle that she would loan her money. (*Id.* at 22). Temple further testified that Baumle would accompany her when she would withdraw money using her debit card, but she avowed that she did not share her PIN number with Baumle. (*Id.* at 23). Temple also testified that she did not give Baumle her debit card to make purchases for Temple. (*Id.*).

{¶17} Thereafter, the State moved to admit State's Exhibit Three and rested. (*Id.* at 24). State's Exhibit Three was admitted without objection. (*Id.*).

{¶18} The defense called Baumle as a witness. Baumle testified that she told Temple that she was not going to have enough money to pay her bills and that she needed Temple "to float [her] some money and [Temple] said okay." (*Id.* at 29). Baumle testified that she and Temple did not discuss how much money Baumle wanted to borrow from Temple or how Baumle was going to borrow money from Temple. (*Id.* at 29-30). She testified that she used Temple's debit card before, and the following exchange took place:

[The State's Counsel]: What had you used her debit card for?

[Baumle]: We would go to the store – in Payne, we would go to the store and we'd get like stuff for supper that night.

[The State's Counsel]: The two of you together?

[Baumle]: Yes.

[The State's Counsel]: When did you ever use her debit card?

[Baumle]: If I was told to go to, like, the gas station and then get gas for my car.

[The State's Counsel]: How would you get her debit card then?

[Baumle]: She would give it to me.

[The State's Counsel]: Okay. Did you [sic] give you the PIN number?

[Baumle]: We knew each other's PIN numbers.

[The State's Counsel]: Okay. And how did you know each other's PIN numbers?

[Baumle]: Because hers was her birthday and so is mine.

[The State's Counsel]: Okay. So it wasn't hard to figure out.

[Baumle]: No.

(*Id.* at 30-31).

**{¶19}** As related to the instances that Baumle took Temple's debit card at issue in this case, Baumle testified that she took Temple's debit card from Temple's wallet without Temple's knowledge or consent. (*Id.* at 32). She testified that she thought she had permission to take Temple's debit card "[b]ecause [they] had talked about it before" and because Temple agreed to loan her money. (*Id.* at 33). Baumle further testified that Temple knew that she was going to borrow money from her, but Temple did not know that Baumle was going to borrow money from her by taking her debit card. (*Id.* at 34). Baumle testified that she used Temple's card "[s]ix times maybe, seven to ten" prior to the times at issue in this case. (*Id.* at 35-36).

**{¶20}** On cross-examination, Baumle testified that she accompanied Temple to the Payne Police Department to report the theft when Temple first

discovered the money missing from her savings account. (*Id.* at 37). However, although Baumle testified that Temple consented to her taking her debit card because they "had talked before," she did not initially confess to Temple because she "didn't know how to, like, tell her" and because she "just didn't have the money to cover it." (*Id.*). Baumle also testified that she did not ask for Temple's permission to use her debit card any of the times that she used it. (*Id.* at 39).

{¶21} On redirect examination, Baumle testified that she told Temple that she needed money on one of the instances she used her debit card and that Temple said, "Okay." (*Id.* at 41). She testified that she did not tell Temple that she was going to use her debit card on the other days because she thought that Temple gave her permission to do so. (*Id.* at 43).

{¶22} Thereafter, the defense rested and closing arguments were presented. (*Id.* at 44-48).

{¶23} We first review the sufficiency of the evidence supporting Baumle's theft conviction. *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999). As noted above, Baumle does not contest that she took Temple's debit card and made the withdrawals; rather, she argues that the evidence fails to show that she "deprived" Temple of her debit card as the term is used in the theft statute and that she took Temple's debit card without her consent.

{¶24} Although Baumle challenges separate elements of her theft conviction, we address those elements together because the "deprive" element correlates to the "consent" element of that offense in this case.

{¶25} Based on the evidence presented, the trier of fact could have reasonably concluded that Baumle purposely deprived Temple of her debit card without her consent. Though, Baumle avers that, because she did not *permanently* deprive Temple of her debit card, she did not commit theft and that there is insufficient evidence that Temple did not consent to Baumle using Temple's debit card. Baumle's arguments are meritless.

{¶26} "Deprive" means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, *use*, or appropriate money, *property*, or services *with purpose not to give proper consideration in return for the* money, *property*, or services, *and without reasonable justification or excuse for not giving proper consideration*.

(Emphasis added.) R.C. 2913.01(C). That Baumle did not intend to *permanently* deprive Temple of her debit card is of no consequence. *See State v. Breaston*, 8 Ohio App.3d 144, 145 (10th Dist.1982) ("It is no longer necessary that defendant have an intent to permanently deprive the owner of the property to be guilty of theft or of receiving stolen property."); *State v. Bilick*, 8th Dist. Cuyahoga No. 71238, 1997 WL 358282, *5 (June 26, 1997) (Dyke, J., concurring), citing *Breaston* and Committee Comment to House Bill 511, effective January 1, 1974 ("The definition of 'deprive' in this section is also broadened to include a temporary deprivation of property resulting in some substantial loss to the owner."). *See also State v. Jordan*, 9th Dist. Summit No. 26598, 2013-Ohio-4172, ¶ 28 ("Pursuant to R.C. 2913.02(A)(1), a defendant need only have 'purpose' to deprive the owner of property; he need not actually permanently withhold or dispose of the property.").

{¶27} Baumle admitted that she temporarily deprived Temple of her debit card, which resulted in a substantial loss to Temple. (Apr. 10, 2014 Tr. at 6, 32, 39); (State's Ex. 3). Because Baumle admittedly used Temple's debit card without giving her proper consideration for it, we need only address whether she had a reasonable justification or excuse for not giving Temple proper consideration for the debit card—that is, whether Baumle was justified in taking Temple's debit

card to withdraw the money because Temple consented to Baumle using her debit card.

**{¶28}** There is sufficient evidence that Baumle did not have a reasonable justification or excuse for not giving Temple proper consideration for the debit card because she took it without Temple's consent. During her case-in-chief, Baumle admitted that she took Temple's debit card without her knowledge or consent. (Apr. 10, 2014 Tr. at 32, 39). Specifically, Baumle testified that she took Temple's debit card out of her wallet and replaced it after each use and that "[s]he didn't know" that Baumle was doing this. (*Id.* at 32-33). Indeed, although Baumle maintained that she discussed borrowing money from Temple with her and that Temple agreed to "float her some money," Baumle acknowledged that she did not discuss with Temple how much money she was to borrow from her, that she would borrow money from her by using her debit card, or how she would repay her. (*Id.* at 29-30). Chief Miller testified that Baumle admitted to him that she took Temple's debit card without her permission, and that Baumle also admitted that she took Temple's debit card without her consent in the written statement that she provided him. (*Id.* at 12); (State's Ex. 3). Temple testified that she did not give Baumle permission to use her debit card, tell Baumle her PIN number, or have any discussion with Baumle about her borrowing money from her. (Apr. 10, 2014 Tr. at 16-18, 20-23). Accordingly, there is sufficient evidence

that Baumle did not have a reasonable justification or excuse for not giving Temple proper consideration for the debit card because she took Temple's debit card without her consent—that is, there is sufficient evidence that Baumle and Temple did not have an agreement that Baumle was to borrow money from Temple by using her debit card.

{¶29} Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Baumle had the purpose to deprive Temple of her debit card without her consent, and therefore, committed theft.

{¶30} Having concluded that Baumle's conviction is based on sufficient evidence, we next address Baumle's argument that her conviction is against the manifest weight of the evidence. *Velez*, 2014-Ohio-1788, at ¶ 76. As we summarized above, Baumle admitted that she used Temple's debit card without her consent. Also, as we summarized above, there is sufficient evidence that Baumle purposely deprived Temple of her debit card.

{¶31} Consequently, this case ultimately came down to whether the trier of fact believed Baumle's story or Temple's story. Even when applying the manifest-weight standard of review, an appellate court must allow the trier of fact *appropriate* discretion in determining the credibility of the witnesses. *DeHass*, 10 Ohio St.2d at 231. Such deference is warranted because "'the trier of fact is in the

best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Kring*, 10th Dist. Franklin No. 07AP-610, 2008-Ohio-3290, ¶ 44, quoting *State v. Wright*, 10th Dist. Franklin No. 03AP-470, 2004-Ohio-677, ¶ 11. That being said, after reading the testimony presented at trial, we are persuaded that Baumle lacked credibility.

**{¶32}** To begin with, Baumle changed her story while on the witness stand. Specifically, she testified during cross-examination that Temple did not give her permission to use her debit card for any of the times, at issue in this case, that she used it. (Apr. 10, 2014 Tr. at 39). Similarly, Chief Miller testified that Baumle admitted to him that the times she used Temple's debit card, she did so without her permission, and that she also admitted that she took Temple's debit card without her permission in the written statement that she provided him. (*Id.* at 12); (State's Ex. 3). However, during redirect examination, Baumle testified that she asked for Temple's permission one of the times that she used her debit card and that Temple replied, "Okay." (Apr. 10, 2014 Tr. at 41).

**{¶33}** Likewise, although Baumle testified that she intended to repay Temple when she used her debit card without her permission, Baumle's assertions appeared disingenuous since her offer to repay Temple was made only after speaking with Chief Miller. Baumle testified that she did not confess to Temple or

Chief Miller when she first accompanied Temple to the Payne Police Department where Temple reported to Chief Miller that there was money missing from her account because she "didn't know how to, like, tell her" and she "just didn't have the money to cover it." (Apr. 10, 2014 Tr. at 37). Nonetheless, Baumle later testified that she told Temple that she was going to repay her by "borrowing against [her] car." (*Id.* at 40). Although, it is unclear from Baumle's testimony when Baumle made this declaration to Temple, the record reflects that she made this offer to Temple only after being confronted about using Temple's debit card. Baumle stated in her written statement that she provided to Chief Miller that she offered to take a loan out against her car to repay Temple after Temple learned that it was her using her debit card. (*See* State's Ex. 3).

{¶34} Nonetheless, Baumle argues that it was Temple's testimony that was "contradictory and at times disingenuous from other facts presented and at times just lacked common sense." (Appellant's Brief at 4). Specifically, Baumle argues that Temple's testimony that she was "shocked and surprised" to learn that it was Baumle that had used her debit card was contradicted by Chief Miller's testimony that Temple was "not surprised" to learn that it was Baumle who used her debit card. Likewise, Baumle argues that Temple was seeking to "exact revenge" on her because she caused Temple's boyfriend to break up with her. However,

-17-

Baumle's arguments are underwhelming compared to the evidence that she committed theft.

**{¶35}** Rather, Temple was consistent with her story. Temple testified that she never allowed Baumle to use her debit card, that she did not tell Baumle her PIN number, that she did not discuss with Baumle that Baumle needed to borrow money from her, and that she did not agree to loan money to Baumle. (Apr. 10, 2014 Tr. at 17-18). When asked if she was motivated to testify against Baumle because Baumle caused her boyfriend to break up with her, Temple responded, "I don't think that has anything to do [sic] why we are here today." (*Id.* at 20). In addition, Temple testified that Baumle asked her to change her story prior to the start of trial. (*Id.*).

**{¶36}** Baumle also suggests that there was a reasonable inference that Temple gave Baumle at least some sort of consent to use her debit card because Baumle knew her PIN number. However, there is no evidence that Temple told Baumle her PIN number. Indeed, Baumle testified that, similar to her own PIN number being based on her birthday, Temple's PIN number was based on Temple's birthday and that it was not hard for her to figure out. (*See id.* at 31).

**{¶37}** After weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determination, we cannot conclude that the trier of fact clearly lost its way and

created a manifest injustice. As such, we are not persuaded that Baumle's theft conviction must be reversed and a new trial ordered.

{¶38} For these reasons, Baumle's first and second assignments of error are overruled.

### Assignment of Error No. III

**The trial court erred in finding the defendant guilty of felony theft when no evidence was presented as to the value of the property stolen.**

{¶39} In her third assignment of error, Baumle argues that the debit card at issue in this case does not meet the definition of a credit card under R.C. 2913.71 or R.C. 2913.01(U). As such, she avers that, because no evidence was offered as to the debit card's value, she could not be convicted of a fifth-degree felony.

{¶40} Baumle's argument is misguided. R.C. 2913.05(B)(2) provides, in relevant part: "[I]f the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree." R.C. 2913.71 provides:

Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or 2913.51 of the Revised Code is a felony of the fifth degree if the property involved is * * * [a] credit card[.]

R.C. 2913.71(A).

{¶41} The statutory definition of a "credit card" includes debit cards. R.C. 2913.01(U) defines "credit card" as including: a *card*, code, device, *or other means of access to a customer's account for the purpose of* obtaining money, property, labor, or services on credit, or for *initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine*.

(Emphasis added.)

{¶42} Baumle used Temple's debit card to initiate an electronic fund transfer from Temple's account at an ATM or a cash dispensing machine. (*See* Apr. 10, 2014 Tr. at 6, 32); (State's Exs. 1, 2). Thus, Temple's debit card falls within the definition of "credit card" under R.C. 2913.01(U). *See State v. Smiley*, 8th Dist. Cuyahoga No. 92572, 2010-Ohio-656, ¶ 34-35 (concluding that a debit card is within the definition of "credit card" under R.C. 2913.01(U)); *State v. Patton*, 2d Dist. Montgomery No. 25756, 2014-Ohio-2099, ¶ 9, fn. 1 (noting that the statutory definition "can include a debit card"); *State v. Jennings*, 11th Dist. Lake No. 2001-L-141, 2002-Ohio-7266, ¶ 33 (concluding that a money card is within the definition of "credit card" under R.C. 2913.01(U) because "[m]oney cards are a 'means of access to a customer's account' for the purpose of 'initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine,

or a cash dispensing machine'"). Therefore, because the debit card at issue in this case is included in the statutory definition of a "credit card" under R.C. 2913.01(U), it is included in the meaning of "credit card" in R.C. 2913.71. As such, the trial court did not err in convicting Baumle of a fifth-degree felony.

{¶43} Baumle's third assignment of error is overruled.

{¶44} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J. and, WILLAMOWSI, J., concur.**

**/jlr**