[Cite as *State v. Turner*, 2013-Ohio-2433.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No. 26591 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| LISA L. TURNER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 12 01 0193 |

DECISION AND JOURNAL ENTRY

Dated: June 12, 2013

CARR, Judge.

{¶1}  Appellant, Lisa Turner, appeals the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}  This matter arises out of a theft that occurred at the Little Tikes factory in Hudson, Ohio, during the early morning hours of January 3, 2012.  On February 13, 2012, the Summit County Grand Jury returned an indictment charging Lisa Turner with one count of theft and one count of misuse of credit cards.  Turner pleaded not guilty to the charges at arraignment and the matter proceeded to trial before a jury. Turner was convicted of both counts in the indictment.  The trial court subsequently sentenced Turner to a 12-month term of incarceration on the count of theft, and a six-month term of incarceration on the count of misuse of credit cards.  The sentences were ordered to be served concurrently.  The trial court issued its sentencing entry on July 23, 2012, and Turner filed a timely notice of appeal.

{¶3} On appeal, Turner raises three assignments of error. This Court rearranges those assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR II**

DEFENDANT'S CONVICTIONS FOR THEFT AND MISUSE OF CREDIT CARD WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT OVERRULED DEFENDANT'S CRIM.R. 29(A) MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR THEFT AND MISUSE OF CREDIT CARD.

{¶4} In her second assignment of error, Turner argues that her convictions were against the manifest weight of the evidence. In her third assignment of error, Turner argues that the trial court erred in denying her motion for a judgment of acquittal because the State failed to present evidence to support her convictions. This Court disagrees with both assertions.

{¶5} Turner was convicted of theft in violation of R.C. 2913.02(A)(1), which states, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exists." R.C. 2901.22(B). Pursuant to R.C. 2913.01(C), to "deprive" means to do any of the following:

Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

Dispose of property so as to make it unlikely that the owner will recover it;

Accept, use, or appropriate money, property, or services with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

{¶6} Turner was also convicted of misuse of credit cards in violation of R.C. 2913.21(B)(2), which states, "No person, with purpose to defraud, shall * * * [o]btain property or services by the use of a credit card, in one or more transactions, knowing or having reasonable cause to believe that the card has expired or been revoked, or was obtained, is retained, or is being used in violation of law[.]"

## CRIMINAL RULE 29

{¶7} This Court first addresses Turner's third assignment of error as it relates to the sufficiency of the evidence presented by the State at trial. Turner argues that the State failed to prove that she exerted control over Ms. Johnson's credit card without her permission. Turner also argues that the State failed to demonstrate that she used the credit card knowing that the card had been obtained or retained in violation of the law. Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶8} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. No. 19600, 2000 WL 277908 (Mar. 15, 2000). "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." *Id*., citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook J., concurring). When reviewing the

sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶9} The alleged victim, Heather Johnson, had been employed by Little Tikes for about four months when she went in for her shift that began on the evening of January 2, 2012. Ms. Johnson worked the third shift from 11:00 p.m. to 7:00 a.m. on the "grill line" where she trimmed parts and prepared them to be packaged. When Ms. Johnson took her scheduled break at 3:30 a.m. on January 3, 2012, she walked into the break room and pulled her wallet out of her purse so that she could get some change for the vending machines. She then placed her wallet back in her purse and walked to the vending machines, leaving her purse open on a table. The table was located in a spot close to the door leading out to the smoking room. Ms. Johnson's wallet contained her social security card, her debit card, as well as other miscellaneous items. Ms. Johnson testified at trial that she was "positive" she placed her wallet back in her purse prior to going to the vending machines. At that time, she was the only person in the break room. Because the vending area was located behind a wall, Ms. Johnson could not see her purse while she used the vending machines. Ms. Johnson testified that while she was at the vending machines, she heard the door to the break room open. After spending "[a] couple of minutes" at

the vending machine, Ms. Johnson returned to the table and finished her lunch. Ms. Johnson then took her purse with her and returned to her line.

{¶10} At just after 7:00 a.m., when Ms. Johnson had completed her shift, she stopped by the vending machines again while she was waiting for her ride home. When she opened her purse, she saw that her wallet was missing. After searching the trash and the shavings box, she spoke with a human resources representative to see if someone had turned in her wallet. Ms. Johnson then went to Chase Bank to give notice that her wallet had been stolen, and she learned that charges had been made on her credit card that morning at Sheetz and Circle K gas stations, as well as a Save-A-Lot grocery store. She promptly informed the bank that she had not made those charges. Ms. Johnson testified that the card was a debit card that could be used as a credit card, and that she had last used the card several days earlier at a Value King supermarket. Ms. Johnson explained that a PIN was required when using the card as a debit card, but the PIN was not required to use the card as a credit card. Ms. Johnson had never used the card as a credit card. After canceling the card at the bank, Ms. Johnson filed a police report with the Hudson police department.

{¶11} Officer Tyson Dinda assisted Ms. Johnson in filing the report. Officer Dinda asked Ms. Johnson to contact her bank to get the time and location of each transaction that had been made on her credit card. Upon obtaining that information, Officer Dinda then went to Sheetz, where he confirmed that Ms. Johnson's card had been used to buy gasoline at 7:23 a.m. that morning, and a pack of Maverick Menthol cigarettes at 7:24 a.m. that morning. The manager at Sheetz also allowed Officer Dinda to view a surveillance video that showed the transactions taking place. The surveillance video, which was played at trial, captured footage of the individual who used Ms. Johnson's card from five separate security camera angles, namely a

shot of the individual at the gas pump, a shot of the individual entering the store, as well as three separate shots of the individual at the cash register where the transactions ultimately occurred. Two receipts from the transactions were also introduced at trial, and Officer Dinda testified that the times on the receipts corresponded with the times of the transactions on the surveillance video. The receipts revealed that it was, in fact, Ms. Johnson's card that had been used to make the purchases. From the video, Officer Dinda was able to obtain three still images of the individual who had used Ms. Johnson's card. Officer Dinda then sent the images to Ms. Johnson to inquire as to whether she could identify the individual. When Ms. Johnson viewed the images, she recognized the individual as "Lisa," someone who also worked the third shift together at Little Tikes. While Ms. Johnson was "absolutely certain" that she recognized Lisa from her department at work, she was not aware of the Lisa's last name at that time. Ms. Johnson informed Officer Dinda that she had seen Lisa at the factory during the shift when the incident occurred. Ms. Johnson explained that while they did not work on the same line, Lisa worked on a line across the aisle that was between 20 and 40 feet from where Ms. Johnson was stationed. Ms. Johnson further testified that she knew Lisa was a smoker.

{¶12} Officer Dinda testified that after obtaining the information about the possible identification of the suspect, he went to Little Tikes and spoke with Juleen Payne, a human resources coordinator. Officer Dinda was able to obtain photographs from Little Tikes. From those photographs, Officer Dinda was able to confirm that the individual that Ms. Johnson had identified was, in fact, the person in the video. Officer Dinda returned to the police station where he obtained the contact information for Lisa Turner. Officer Dinda then called Turner and explained that a credit card had been stolen and that she was observed using that credit card at a Sheetz gas station, as well as a Circle K and a Save-a-Lot. Turner denied knowing anything

about the situation. When Officer Dinda informed Turner that he had her on a video using the credit card, Turner admitted that she had been to Sheetz but explained that she used her own credit card. Officer Dinda testified that when he told Turner that he knew she had been to Circle K and Save-a-Lot as well, she "told [him] that she used her credit card at [] those locations" but "[denied] any knowledge of a missing credit card." Officer Dinda then asked Turner to come down to the police station to discuss the incident.

{¶13} In the early afternoon of January 3, 2012, Turner traveled to the police station and spoke with Officer Dinda. When Officer Dinda provided Turner with a copy of a photograph from Sheetz, Turner admitted that it was her in the photograph but again claimed that she had used her own credit card. Officer Dinda asked Turner to produce the credit card she had used that morning. Turner then pulled a credit card out of her purse. Officer Dinda testified, "Looking at the credit card she provided me I noted that, number one, it wasn't from a Chase Bank; number two, the last four digits on her credit card were 3040, whereas Heather Johnson's card, which was used in the transactions, was 3065." When Turner continued to adamantly deny that she used Ms. Johnson's credit card, Officer Dinda advised Turner that she was under arrest for theft and misuse of a credit card. Turner was taken to the booking area where she was processed and read her *Miranda* rights. Turner declined to make any statement at that time. As Officer Dinda was walking Turner to the booking area, he noticed that Turner had a pack of Maverick Menthol cigarettes in her purse.

{¶14} On the evening of January 3, 2012, Turner made a phone call from the Summit County jail in which she discussed the events that had transpired that morning with an unidentified man as well as her mother. During the phone call, Turner admitted to her mother that she used a credit card at Sheetz that was not her own. Turner claimed to have found the

credit card in the parking lot at Little Tikes, where "there were a whole lot of cards" on the ground. Turner further stated, "I stopped at the Sheetz gas station. I bought cigarettes with my own card. Then I went back in to see if that card worked. I said can I get $25 on pump one. And the lady took the card and swiped it and gave it back. And that was it." When Turner's mother exclaimed, "but you knew that wasn't your card," Turner responded, "I know. I know. I know. I didn't know [whose] it was." Turner further stated during the phone call that she did not think she could be convicted because the images she viewed earlier that day at the police station only showed her standing behind the counter and did not provide a clear view of what type of card was used. The State introduced this phone call at trial. Deputy Nancy Mundy from the Summit County Sheriff's Department testified regarding the process by which telephone calls are recorded at the Summit County jail. Deputy Mundy further testified that she was responsible for keeping a record of jail calls, and that she provided the prosecutor's office with the a CD of the calls relevant to this case.

{¶15} The evidence presented by the State was sufficient to convict Turner of theft and misuse of a credit card. Ms. Johnson left her wallet in her open purse while she used the vending machines during her shift break. Ms. Johnson was the only person in the break room at that time, and she testified that she was "absolutely certain" her wallet was in her purse when she set it on a table before walking to the vending area. While Ms. Johnson was using the vending machines, she heard the door to the smoking room open. Ms. Johnson testified that Turner is a smoker, and that Turner was working third shift on the date in question. At the conclusion of her shift, Ms. Johnson discovered that her wallet, which contained her credit card, was missing from her purse. Ms. Johnson contacted Chase Bank and learned that charges had been made to her credit card at Sheetz, Circle K, and Save-a-Lot. When Ms. Johnson relayed the time and location

of each transaction to Officer Dinda, he went to Sheetz where he was able to view the receipts from the transactions which corresponded with the records from Chase Bank. The receipts showed that Ms. Johnson's card had been used to buy $25 worth of gas and a pack of Maverick Menthol cigarettes. Officer Dinda also viewed a surveillance video that showed Turner at Sheetz at the time that the charges were put on Ms. Johnson's credit card. When Officer Dinda spoke with Turner at the police station, she admitted to being at Sheetz at the time the transactions occurred. While Turner denied any knowledge of a missing credit card, Turner later admitted during a jail call that she used a credit card that was not her own to buy $25 worth of gas at Sheetz. Officer Dinda also observed a pack of Maverick Menthol cigarettes in Turner's purse. This evidence, when construed in the light most favorable to the State, was sufficient to survive Turner's motion for acquittal.

{¶16} Turner's third assignment of error is overruled.

**MANIFEST WEIGHT**

{¶17} Turner argues that she took the position at the trial that she used her own credit card at Sheetz, Circle K, and Save-a-Lot, and that the State made no attempt to demonstrate that she used the card at either Circle K or Save-a-Lot. Turner further argued that if it were not for the improper admission of the surveillance video and the transaction receipts, the remaining evidence at trial weighs heavily in favor of acquittal.

{¶18} Unlike an analysis of whether the State met its burden of production, a determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, ¶ 11. Rather,

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

{¶19} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶20} After a careful review of the entire record, weighing the inferences and examining the credibility of the witnesses, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice in convicting Turner of theft and misuse of a credit card. There was no evidence presented at trial to dispute Ms. Johnson's testimony that her wallet was in her purse at the time she set her purse down on a table before using the vending machines during her break. There is also no dispute that Ms. Johnson and Turner were both working third shift on the night of the incident. Ms. Johnson testified that she heard the door to the smoking room open while she was using the vending machines during her break, and she knew that Turner was a smoker. After Ms. Johnson discovered that her credit card was missing, Chase Bank informed her of the time and location of each transaction that was charged to her card. Turner admitted to Officer Dinda that she went to Sheetz and Save-a-Lot after she finished her shift. Turner further admitted in a jail call that she purchased gas at Sheetz with a credit card that was not her own.

Under these circumstances, we cannot conclude that this is the exceptional case where the evidence weighs heavily in favor of the defendant and against conviction.

{¶21} Accordingly, Turner's second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN OVERRULING TURNER'S OBJECTION AND PERMITTING THE STATE TO PLAY A SURVEILLANCE VIDEO AND INTRODUCE TRANSACTION RECEIPTS WITHOUT THEM BEING PROPERLY AUTHENTICATED.

{¶22} In her first assignment of error, Turner argues that the trial court erred in allowing the State to introduce certain exhibits at trial. Specifically, Turner argues that the State failed to properly authenticate the Sheetz surveillance video and transaction receipts pursuant to Evid.R. 901.

{¶23} Evid.R 901 provides that authentication or identification of a piece of evidence is a condition precedent to the admissibility of that evidence. "Under Evid.R. 901(A), videotapes are properly admitted into evidence only upon sufficient showing that they accurately depict what their proponent purports they depict." *Bryant v. Terry*, 9th Dist. No. 20140, 2001 WL 324389 (Apr. 4, 2001). The admission of videotape evidence is a matter of discretion for the trial court. *State v. Miller*, 9th Dist. Nos. 10CA009922, 10CA009915, 2012-Ohio-1263, ¶ 35. If this Court determines that the trial court improperly admitted the evidence, this Court must then determine whether the error constituted harmless error beyond a reasonable doubt. *State v. Abraham*, 9th Dist. No. 26258, 2012-Ohio-4248, ¶ 42. The application of the harmless error rule is simple; if, in the absence of all erroneously admitted evidence there remains overwhelming evidence of guilt, then the error was harmless. *State v. Williams*, 6 Ohio St.3d 281, 290 (1983).

{¶24} As noted above, during the direct examination of Officer Dinda, the State introduced the Sheetz surveillance video as well as several transaction receipts. Defense counsel objected to the admission of these exhibits on the basis that they were not properly authenticated.

{¶25} Assuming without deciding that the trial court erred in allowing the State to introduce the surveillance video and the receipts, any error was harmless. The exhibits in question were offered for the sole purpose of demonstrating that Turner went to Sheetz after she completed her shift and made charges using Ms. Johnson's credit card. Ms. Johnson was able to view her account record at Chase Bank after her card was stolen, and she testified that her account history indicated that charges were made on her credit card at multiple locations, including Sheetz. Ms. Johnson specifically testified that one of the charges was a $25 transaction at Sheetz. After initially denying any knowledge of the incident, Turner admitted to Officer Dinda that she went to Sheetz after she got off her shift. Turner further admitted during a jail call that while she was at Sheetz, she used a credit card that did not belong to her to purchase $25 worth of gas. Thus, even if the surveillance video and the receipts had not been admitted, it was clear from the evidence presented at trial that Turner went to Sheetz after she completed her shift at Little Tikes and used Ms. Johnson's credit card to purchase gas.

{¶26} It follows that Turner's first assignment of error is overruled.

III.

{¶27} Turner's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
WHITMORE, J.,
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.