[Cite as *State v. Hoffmeyer*, 2014-Ohio-3578.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27065 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| SAMUEL D. HOFFMEYER | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 09 2777 |

DECISION AND JOURNAL ENTRY

Dated: August 20, 2014

WHITMORE, Judge.

{¶1} Appellant, Samuel D. Hoffmeyer, appeals his conviction and sentence from the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} On the night of September 25, 2012, Akron Police Officer Greg Joyce and his partner were inside the Sheetz gas station on the corner of Main and Waterloo Road. A customer entered the store and told them that a truck had just crashed in the parking lot. Officer Joyce and his partner went out to investigate and to see if there were any injuries.

{¶3} Officer Joyce observed a maroon truck crashed over the guardrail separating Sheetz from a neighboring business. There was no one inside the truck. As Officer Joyce looked for the driver, he observed someone running in the neighboring parking lot. Officer Joyce pursued that individual who was eventually apprehended and identified as Hoffmeyer. Officer Joyce noticed a very strong odor of an alcoholic beverage emanating from Hoffmeyer

and that his speech was slurred. Hoffmeyer claimed that a woman, whom he had met at a bar, was driving the truck. He claimed that he did not know the woman's name, where she had gone, or any other information about her. Officer Joyce did not observe any woman in the vicinity of the crashed truck.

{¶4} Because the Sheetz store in question straddles the border of the City of Akron and Coventry Township, Deputy Brad Tackett of the Summit County Sheriff's Office also responded. As Hoffmeyer exited Officer Joyce's cruiser, Deputy Tackett noticed him stumbling. In addition, Deputy Tackett smelled the odor of an alcoholic beverage coming from Hoffmeyer and observed that he had glassy, watery eyes. Deputy Tackett administered field sobriety tests to Hoffmeyer and placed him under arrest.

{¶5} From store employees, Deputy Tackett learned there was video surveillance of the accident. Deputy Tackett reviewed a portion of the videotape with the store manager and requested a copy from the store's corporate office. A few days later, Deputy Tackett picked up the copy of the video, reviewed it, and placed it in the evidence room at the Sheriff's Office.

{¶6} The grand jury indicted Hoffmeyer for operating a vehicle under the influence of alcohol or drugs ("OVI") in violation of 4511.19(A)(1)(a), a felony of the fourth degree because Hoffmeyer had five similar convictions within twenty years of the current offense. *See* R.C. 4511.19(G)(1)(d). The indictment included a prior convictions specification pursuant to R.C. 2941.1413. The matter proceeded to a jury trial.

{¶7} Officer Joyce and Deputy Tackett were the only witnesses to testify at the trial. Over defense counsel's objections, the State played portions of the Sheetz surveillance video. Officer Joyce identified himself in the video as he enters the parking lot and approaches the

crash. The State, then, rewound the video approximately three minutes. At that time, the video shows a maroon truck enter the parking lot and crash into the guardrail.

{¶8} Viewing another angle from the video surveillance, Officer Joyce identified the Sheetz gas pumps and a vehicle that "appeared to be the same vehicle that crashed in the parking lot." He verified that the time matched the time of the crash in the prior angle. Officer Joyce identified the driver of the crashed vehicle as a male with facial hair from an angle of the video surveillance that captured images of drivers' faces as they entered the Sheetz parking lot. Officer Joyce further testified that the driver was wearing clothes that matched Hoffmeyer's clothes when he was apprehended. He again verified that the time corresponded with that in the other video angles.

{¶9} Deputy Tackett, who had arrived on scene later, confirmed the video accurately depicted the location of the maroon truck when he arrived. Deputy Tackett testified as to how he obtained the video. During his investigation, Deputy Tackett determined that the truck was registered to a business owned by Hoffmeyer. The parties stipulated that Hoffmeyer had been convicted of five prior OVI offenses in the past twenty years.

{¶10} The jury found Hoffmeyer guilty of the OVI. The jury also found Hoffmeyer "guilty" of five prior convictions within twenty years. The court sentenced Hoffmeyer to twelve months of incarceration for the OVI and four years of incarceration for the prior convictions specification, to be served consecutively. The court also ordered Hoffmeyer to participate in a substance abuse program while incarcerated and suspended his driver's license for his lifetime.

{¶11} Hoffmeyer appeals from his conviction and sentence, raising three assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ADMITTING SURVEILLANCE VIDEOTAPE OF A CAR CRASH IN VIOLATION OF THE RULES OF EVIDENCE.

{¶12} Hoffmeyer argues the trial court improperly admitted the surveillance video from Sheetz. More specifically, he argues that the video is hearsay that does not qualify under the business record exception, that the video was not properly authenticated, and that the officers provided impermissible lay opinions about the video. We disagree.

{¶13} The admission of videotape evidence is a matter of discretion for the trial court. *State v. Miller*, 9th Dist. Lorain Nos. 10CA009922 & 10CA009915, 2012-Ohio-1263, ¶ 35. *Accord State v. Turner*, 9th Dist. Summit No. 26591, 2013-Ohio-2433, ¶ 23. This Court will not reverse a trial court's admission of a video absent an abuse of discretion. *Miller* at ¶ 35. An abuse of discretion implies that the trial court was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**Hearsay**

{¶14} First, Hoffmeyer argues that the surveillance video is hearsay. According to Hoffmeyer, the State was required to present testimony of a record custodian from Sheetz to qualify the video for the business records exception to hearsay. *See* Evid.R. 803(6).

{¶15} Hearsay is an out-of-court "statement" offered for the truth of the matter asserted. Evid.R. 801(C). Pursuant to Evid.R. 801(A), a statement is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." In order to fall under the definition of hearsay, nonverbal conduct must be "intended by the actor to convey his

thoughts to another." *State v. Kniep*, 87 Ohio App.3d 681, 685 (9th Dist.1993) (video showing six-month old child crying was not hearsay).

{¶16} In the instant matter, Hoffmeyer is not attempting to convey his thoughts to another by his conduct in the video. The video shows a man driving a maroon truck into the Sheetz parking lot, crashing, and fleeing on foot. The surveillance video is not a "statement" as that term is defined in Evid.R. 801(A), and therefore, not hearsay under Evid.R. 801(C). The trial court did not err in declining to require that it meet the business records exception for hearsay.

**Authentication**

{¶17} Next, Hoffmeyer argues that the portion of the video showing the crash should have been excluded because neither witness observed the crash as it happened nor did they testify to the reliability of Sheetz's video surveillance system.

{¶18} Before evidence may be admitted, it must be authenticated or identified sufficiently "to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). The threshold for admissibility is low. *State v. Caldwell*, 9th Dist. Summit No. 14720, 1991 WL 259529, *7 (Dec. 4, 1991). "The proponent need not offer conclusive evidence as a foundation but must merely offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury." *Id.* The proponent has the burden to demonstrate a "reasonable likelihood" the evidence is authentic. *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 65.

{¶19} Photographic evidence, including videotapes, can be admitted under a "pictorial testimony" theory or a "silent witness" theory. *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129-130 (1991). Under the pictorial testimony theory, evidence is admissible

"when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation." *Id.* at 129. The person who took the photograph or video need not testify as long as the witness who does testify verifies that it is a "fair and accurate depiction." *Freeze* at ¶ 66. Under the silent witness theory, evidence is admissible "upon a sufficient showing of the reliability of the process or system that produced the evidence." *Midland Steel* at 130.

{¶20} Hoffmeyer argues that the video cannot be admitted under the "silent witness" theory because no witness testified to the reliability of Sheetz's surveillance system. Assuming, without deciding, that the video could not be admitted under the silent witness theory, it still might be admissible under the pictorial testimony theory.

{¶21} Hoffmeyer contends the pictorial testimony theory is "strictly limited to photographs, not videotapes, which must be authenticated under the 'silent witness' theory." We disagree. In *Midland Steel*, the Ohio Supreme Court explicitly identified "two of the methods for authenticating photographic evidence *like videotapes*." (Emphasis added.) *Midland Steel* at 129. The Supreme Court, then, outlined the pictorial testimony and the silent witness theories. *Id.* at 129-130. In addition, both *Midland Steel* and *Freeze* dealt with the admissibility of evidence obtained from surveillance videos. *Midland Steel* at 129-130; *Freeze* at ¶ 63-70.

{¶22} In *Freeze*, a series of robberies were committed in two communities. *Freeze* at ¶ 2. As part of their investigation, officers reviewed surveillance videos of the establishments and at least one nearby business. *Id.* at ¶ 6, 16, 20. The State introduced evidence from these surveillance videos at trial. In ruling the evidence admissible, the Twelfth District discussed both the pictorial testimony and the silent witness theories, but did not explicitly state which theory it was applying to the evidence. *Id.* at ¶ 66-67. For each of the challenged exhibits, an

officer testified to obtaining the security images and that what was introduced at trial was an accurate representation of what he viewed in the course of his investigation. A person who was present during the robberies also testified regarding two of three challenged sets of exhibits. But, as to the surveillance video and still photographs of a third robbery location, only the officer testified. The officer testified that, as part of his investigation, he viewed and obtained a copy of the video from a neighboring business. The video was of the road and alley outside the store that had been robbed. The video showed a car matching the defendant's drive by the store on the morning of the robbery, and later, drive by and park behind a dumpster. *Id.* at ¶ 20, 70. The time and date stamp on the video matched the time of the robbery in question. *Id.* at ¶ 70. The officer testified that both the video and the still images were "accurate representations of what he originally viewed." *Id.* The officer further identified the location of the video camera, the store that had been robbed, and the neighboring business. *Id.* The court held the video and photographic evidence regarding all three robberies was admissible.

{¶23} We find *Freeze* to be persuasive, and the facts of our case to be similar, if not stronger, on the authentication issue. In *Freeze*, none of the officers who testified were present during the robberies. Rather, they testified that the videos and photographs that were shown to the jury were accurate representations of the videos that they had viewed in the course of their investigation. *Id.* at ¶ 68-70. In our case, Officer Joyce and Deputy Tackett both viewed the crash scene within minutes of it occurring.

{¶24} Deputy Tackett testified that he reviewed a portion of the surveillance video at Sheetz on the night of the accident as part of his investigation. He, then, requested a copy of the video, and, upon receipt, he again reviewed it and placed it in the sheriff's evidence room. Deputy Tackett personally observed the truck approximately ten minutes after the crash, and

testified that the video accurately represents the truck where he observed it. He further identified the area in the video where he administered the field sobriety tests to Hoffmeyer.

{¶25} Officer Joyce identified himself in the video as he enters the parking lot and approaches the crash. He also identified his partner in the video. Officer Joyce testified that he observed a maroon pickup truck on the other side of the guardrail, on the outskirts of the parking lot. He testified as to his observation of the truck and the damage to the guardrail. Officer Joyce further verified when he exited the video and testified about his investigation both while he was in the video and after he exited it. He confirmed that the video truly and accurately depicted what he personally observed and the Sheetz station on the night in question. When shown angles of the video that he was not personally in, Officer Joyce verified that the time stamp corresponded to the time stamp on the angle in which he was seen.

{¶26} While the State showed approximately three minutes of the video prior to Officer Joyce entering the parking lot, the jury was free to accept the video as authentic or to decide that it did not accurately portray the events leading up to the crash. *See Caldwell*, 1991 WL 259529, at *7. Each time Deputy Tackett and Officer Joyce testified that the video accurately portrayed the Sheetz location on the night in question, they "impliedly authenticated" the portion of the video depicting events that occurred just minutes prior to their arrival in the parking lot. *See Midland Steel*, 61 Ohio St.3d at 130. Because the videotape "depicted these known features accurately, it was likely that it also depicted the [other actions] accurately." *See id.*

{¶27} Under the facts of this case, the State met its Evid.R. 901 burden. The video was admissible evidence with the weight to be afforded it being a matter for the jury. *See Caldwell* at *7.

**Lay Opinion**

{¶28} Finally, Hoffmeyer argues that the witnesses offered impermissible lay opinion testimony. We note that Hoffmeyer's assignment of error challenges only the admission of the "surveillance videotape of a car crash." "An appellant's assignment of error provides this Court with a roadmap and directs its analysis of the trial court's judgment." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 24 (declining to address "expert opinion" argument when assignment of error only challenged "inadmissible hearsay testimony"). Hoffmeyer's assignment of error does not contain any assertion that the trial court erred in admitting lay opinion testimony.

{¶29} In addition, Hoffmeyer has not cited us to where in the record either witness presented lay opinion testimony. Rather, Hoffmeyer argues generally that "the witnesses' observation of the video recording [ ] in State's Exhibit #3 was inadmissible lay opinion testimony." Hoffmeyer has not articulated what specific "observation" amounted to "lay opinion testimony." "It is not the duty of this Court to search the record for evidence to support defendant's argument of an alleged error." *State v. Long*, 9th Dist. Summit No. 25249, 2011-Ohio-1050, ¶ 8, quoting *State v. Porter*, 9th Dist. Summit No. 18384, 1997 WL 803070, *4 (Dec. 24, 1997). We decline to address Hoffmeyer's undeveloped argument. *See* App.R. 16(A)(7) (an appellant shall include citations to the parts of the record on which he relies).

**Prejudice**

{¶30} To the extent that Hoffmeyer argues admission of the videotape was "highly prejudicial," we disagree. Hoffmeyer contends he was prejudiced because "the only other evidence of his offense for operating under the influence of alcohol or drugs came from Deputy Tackett's observations of field sobriety tests given to Hoffmeyer," two of which he passed.

Contrary to Hoffmeyer's assertions, the field sobriety test and the video were not the only evidence presented to the jury.

{¶31} Both Officer Joyce and Deputy Tackett testified that they observed a maroon truck, which had crashed into a guardrail. Deputy Tackett testified that the truck belonged to Hoffmeyer's business. Officer Joyce, who had been in the Sheetz's store and entered the parking lot almost immediately after the crash, testified that no one was in the truck. As he searched for the driver, he observed someone running, who was later apprehended and identified as Hoffmeyer. Although Hoffmeyer claimed that a woman he had met at a bar was driving, Officer Joyce testified that he did not locate a woman, or any other pedestrians, in the immediate area of the crash. These circumstances support a finding that Hoffmeyer was operating the vehicle.

{¶32} Officer Joyce and Deputy Tackett also testified regarding their personal observations of Hoffmeyer, which were consistent with an individual who was under the influence of alcohol. There was a strong odor of an alcoholic beverage emanating from Hoffmeyer. Officer Joyce also noted Hoffmeyer's slurred speech. Deputy Tackett observed Hoffmeyer stumbling and that he had glassy, watery eyes. In addition, when questioned following the crash, Hoffmeyer claimed to have met a woman at a bar and indicated that he had a few drinks prior to the crash.

{¶33} Even without the portion of the video showing the crash and testimony regarding it, there was evidence presented from which the jury could have concluded that Hoffmeyer had operated his vehicle under the influence of alcohol, a drug of abuse, or a combination of them. *See* R.C. 4511.19(A)(1)(a). Therefore, Hoffmeyer has not demonstrated that he suffered any prejudice.

{¶34} Hoffmeyer's first assignment of error is overruled.

Assignment of Error Number Two

TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN SENTENCING HOFFMEYER FOR OPERATING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS AS A FOURTH DEGREE FELONY WITH A SENTENCE ENHANCEMENT INSTEAD OF A FIRST DEGREE MISDEMEANOR, BECAUSE THE JURY VERDICT DID NOT INCLUDE THE DEGREE OF THE OFFENSE, NOR ANY AGGRAVATING ELEMENTS AS REQUIRED UNDER R.C. 2945.75(A)(2) AND *STATE V. PELFREY*.

{¶35} In his second assignment of error, Hoffmeyer argues that the jury verdict form was defective under R.C. 2945.75(A)(2) and *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256. Consequently, he argues, he can only be sentenced for a first degree misdemeanor and not a fourth degree felony. We disagree.

{¶36} R.C. 2945.75(A)(2) provides:

When the presence of one or more additional elements makes an offense one of more serious degree * * * [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present.

Pursuant to this statutory language, a jury's verdict form must include either the degree of the offense or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense. *Pelfrey* at syllabus. The inclusion of either the degree of the offense or the additional element needed to enhance the conviction is sufficient to satisfy the statute. *See Long*, 2011-Ohio-1050, at ¶ 18.

{¶37} An OVI offense can be a misdemeanor, a first degree misdemeanor, a fourth degree felony, or a third degree felony. R.C. 4511.19(G)(1)(a)-(e). The degree of an OVI offense depends on the presence of previous convictions or guilty pleas for an equivalent offense. *See id.* As it relates to the present case, R.C. 4511.19(G)(1)(d) specifies that "an offender who, within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more violations of that nature is guilty of a felony of the fourth degree."

{¶38} In the present case, the jury instructions directed, in part, "[i]f your verdict is guilty, you will separately determine whether the Defendant was previously convicted of or pled guilty to five or more OVI offenses in the past twenty years. If your verdict is not guilty, you will not determine this issue." The jury was provided two verdict forms – one for Count One and a second form for the specification to that count. The verdict form for Count One provided:

> We, the Jury, being duly impaneled and sworn, do find the Defendant, SAMUEL D. HOFFMEYER, * _____ of the offense of OPERATING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS.
>
> *Insert in ink either "Guilty" or "Not Guilty."
>
> We, the Jury, further find that, within twenty (20) years of committing the above offense of Operating Under the Influence of Alcohol or Drugs, Defendant, SAMUUEL D. HOFFMEYER ** _____ previously convicted of or pled guilty to five or more offenses involving Operating Under the Influence.
>
> ** Insert in ink either "was" or "was not."

(Emphasis omitted). The verdict form for the Specification, likewise, stated:

> We, the Jury, being duly impaneled and sworn, do find that, within twenty (20) years of committing the above offense of Operating Under the Influence of Alcohol or Drugs, Defendant, SAMUEL D. HOFFMEYER, * _____ previously convicted of or pled guilty to five or more offenses involving Operating Under the Influence.
>
> *Insert in ink either "was" or "was not."

After reading the jury instructions, including the verdict forms, the court reiterated, at defense counsel's request, "if there is a finding of not guilty [on] Count One, then it would not be necessary to fill out the specification to Count One."

{¶39} The additional element elevating Hoffmeyer's OVI offense to a fourth degree felony was that he had five or more OVI convictions within twenty years of the present OVI offense. *See* R.C. 4511.19(G)(1)(d). The verdict forms tracked the statutory language specifying, "within twenty (20) years of committing the above offense of Operating Under the

Influence of Alcohol or Drugs, Defendant, SAMUEL D. HOFFMEYER, []_____ previously convicted of or pled guilty to five or more offenses involving Operating Under the Influence." Because the verdict forms included the additional element making Hoffmeyer's offense one of a more serious degree, this case does not present a *Pelfrey* issue.

{¶40} When the verdict was announced in open court, the trial judge observed that the jury had written "GUILTY" rather than "was" or "was not" in two places on the verdict forms. The trial judge asked the foreperson what the jury intended when it wrote "guilty" on these lines. The foreperson responded: "The jury's intention was to put 'was,' Your Honor. My apologies." At the request of Hoffmeyer, the jury was polled and every juror confirmed this intention.

{¶41} On appeal, Hoffmeyer argues that because the jury inserted the word "guilty," rather than "was," it did not reach a unanimous written decision, thereby rendering the portion of the verdict pertaining to his five prior convictions within twenty years void. We disagree.

{¶42} "Jury verdicts in criminal cases are to have reasonable constructions and are not to be declared void unless from necessity originating in doubt of their import or irresponsiveness to the issue submitted, or unless they show a manifest tendency to work injustice." *State v. Tebcherani*, 9th Dist. Summit No. 19535, 2000 WL 1729456, *3 (Nov. 22, 2000), quoting *State v. McNicol*, 143 Ohio St. 39 (1944), paragraph two of the syllabus. The requirement that a jury verdict in a criminal case be in writing is procedural rather than substantive. *State v. Carmack,* 61 Ohio App.3d 351, 353-355 (1st Dist.1989) (accepting verdict form signed by 11 of 12 jurors after polling jury as to assure unanimity). Some errors on a verdict form amount to a "mere oversight" or "scrivener's error." *State v. Fugate*, 4th Dist. Washington No. 97 CA 2546, 1998 WL 729221, *5 (Oct. 2, 1998) (juror signature did not match name in trial court entry). Even when "[t]he better practice * * * would have been for the trial court to reconvene the jury to

redeliberate [on one count]," the defendant might not be prejudiced by the correction of a clerical error based on a "careful read[ing] of the entire verdict form." *State v. Davie*, 80 Ohio St.3d 311, 326 (1997).

{¶43} Hoffmeyer contends the word "Guilty" in the portion of the verdict form pertaining to his prior convictions makes the verdict "nonsensical." That portion reads:

> We, the Jury, being duly impaneled and sworn, do find that, within twenty (20) years of committing the above offense of Operating Under the Influence of Alcohol or Drugs, Defendant, SAMUEL D. HOFFMEYER, []GUILTY previously convicted of or pled guilty to five or more offenses involving Operating Under the Influence.

While the use of the word "GUILTY" may be grammatically improper in this sentence, we cannot say that it led to a doubt of the meaning of the verdict or made it unresponsive to the issue of the prior convictions.

{¶44} Moreover, given the parties' stipulation that Hoffmeyer had five convictions within the past twenty years, Hoffmeyer has not demonstrated how the result would have been different if the jury had been sent back to deliberate on this issue.

{¶45} Hoffmeyer's second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

HOFFMEYER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO ARGUE THAT THE TRIAL COURT SHOULD HAVE SENTENCED HOFFMEYER ON HIS OPERATING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS AS A FIRST DEGREE MISDEMEANOR.

{¶46} In his third assignment of error, Hoffmeyer argues that his counsel was ineffective for failing to object to the trial court sentencing him for a felony of the fourth degree rather than a misdemeanor of the first degree. We disagree.

**{¶47}** To prove ineffective assistance of counsel, Hoffmeyer must establish that (1) his counsel's performance was deficient, and (2) that but for counsel's deficient performance there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both the deficiency and the prejudice prongs if the defendant fails to prove either one. *State v. Jones,* 9th Dist. Summit No. 26226, 2012-Ohio-2744, ¶ 16.

**{¶48}** As discussed under assignment of error number two, the record supports Hoffmeyer's conviction as a felony of the fourth degree. Because there was no reversible error with the jury verdict, the failure to object did not prejudice Hoffmeyer. *See In re N.R.*, 9th Dist. Medina No. 13CA0091-M, 2014-Ohio-2333, ¶ 9.

**{¶49}** Hoffmeyer's third assignment of error is overruled.

III

**{¶50}** Hoffmeyer's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

HENSAL, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.