[Cite as *State v. Jamison*, 2016-Ohio-5122.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 27664 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| LEROY JAMISON, JR. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 14 02 0557 |

DECISION AND JOURNAL ENTRY

Dated: July 27, 2016

HENSAL, Presiding Judge.

{¶1} Leroy Jamison appeals a judgment of the Summit County Court of Common Pleas that convicted him of receiving stolen property, operating a vehicle under the influence of alcohol or drugs, and possessing marijuana. For the reasons that follow, we affirm.

I.

{¶2} Tonya VanHorn testified that she was on her way home one afternoon when she noticed that the driver of a car in the left-turn lane appeared to be passed out. She, therefore, stopped her car and called the police. Around the same time, Shelia Adams noticed that the driver of the car seemed to be asleep, so she stopped to check on him. According to Ms. Adams, she approached the car and tapped on it, trying to get the driver's attention. The window of the car was open, so when the driver did not respond, she tapped his shoulders. After the driver came to, she reached inside the car to try to turn it off, but he slapped her hand away. When she opened the door of the car to help the driver out, she saw that there was an open beer can in the

center console and a bag with a green chopped-up substance in the driver-side door. She eventually got the driver out of the car and walked him around to the passenger side. When officers arrived, Ms. VanHorn and Ms. Adams continued on their way.

{¶3} Police officers Ben Hill and Nathan Samples responded to the intersection and identified Mr. Jamison as the driver of the vehicle. Officer Samples conducted field sobriety tests, during which Mr. Jamison gave several markers indicating that he was impaired. Before conducting the tests, the officers performed a patdown search of Mr. Jamison, which led to the discovery of two debit cards issued in the name of Candace Bussey. Ms. Bussey had reported the cards stolen earlier that day. In her police report, Ms. Bussey stated that she believed the father of one of her children was a likely suspect because he was the only person with access to her residence at the time of the cards' theft. When asked about the debit cards during the booking process, Mr. Jamison said that he received the cards from a person who resembled the man Ms. Bussey described.

{¶4} The Grand Jury indicted Mr. Jamison for one count of receiving stolen property, one count of possession of marijuana, and four counts of operating a vehicle under the influence (OVI). The State dismissed three of the OVI counts before trial. A jury found Mr. Jamison guilty of the receiving stolen property count and the remaining OVI count. The trial court found him guilty of the possession of marijuana count, and it sentenced him to a total of one year in prison. Mr. Jamison has appealed, assigning ten errors. We will address some of the assignments of error together.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT DENIED MR. JAMISON'S MOTION FOR A BILL OF PARTICULARS.

{¶5} In his first assignment of error, Mr. Jamison argues that the trial court committed reversible error when it denied his motion for a bill of particulars. He notes that Criminal Rule 7(E) provides that, if a defendant makes a written request for a bill of particulars, the prosecuting attorney "shall furnish" one "setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense." *See also* R.C. 2941.07.

{¶6} The State argues that, despite Mr. Jamison's written request, it did not have to provide him with a bill of particulars because it has open-file discovery. This Court has written that, notwithstanding Rule 7(E), if "the prosecutor permitted a full examination of his file by defense counsel, a bill of particulars is not required." *State v. Sarnescky*, 9th Dist. Summit No. 12257, 1986 WL 2228, *1 (Feb. 12, 1986). The Ohio Supreme Court has explained that, although "the denial of a timely request for a bill of particulars should never occur," the more important question is whether the defendant suffered "prejudice as a consequence of the denial[.]" *State v. Chinn*, 85 Ohio St.3d 548, 569 (1999).

{¶7} Mr. Jamison argues that the State's failure to provide him with a bill of particulars undermined his ability to defend himself. He notes that the indictment accused him of having two stolen debit cards in his possession. At trial he argued that a debit card does not qualify as a credit card under Revised Code Section 2913.01(U), but the court held that debit cards are a form of credit card for purposes of the statute. Because Mr. Jamison's defense turned on an interpretation of the law and not the nature of the offense, we conclude that he has not established how the lack of a bill of particulars harmed him.

{¶8} Mr. Jamison also notes that the State only introduced photographs of the front of the debit cards at trial. Upon learning that the State did not have a picture of the back of the cards, Mr. Jamison requested a continuance to find out what was on the backs and to validate the

cards. Mr. Jamison's argument does not show how a bill of particulars would have aided his defense. "A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985). Any surprise to Mr. Jamison about the debit cards appears to be attributable to his failure to review the State's discovery file before trial, not its failure to provide him with a bill of particulars. Upon review of the record, we conclude that Mr. Jamison has not demonstrated that he suffered prejudice because of the denial of his motion for a bill of particulars. Mr. Jamison's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY ALLOWING THE INTRODUCTION OF EVIDENCE AND THE TESTIMONY OF A WITNESS IN VIOLATION OF THE RULES OF DISCOVERY UNDER CRIM.R. 16.

{¶9} In his second assignment of error, Mr. Jamison argues that the trial court erred when it allowed Ms. Bussey to testify because the State did not include her on its list of witnesses. Mr. Jamison also argues that the court incorrectly allowed the State to offer photocopies of Ms. Bussey's debit cards into evidence because it did not provide him with the photocopies before the first day of trial.

{¶10} Regarding Ms. Bussey's testimony, Criminal Rule 16(I) provides that "[e]ach party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call [at trial] * * *." Mr. Jamison, however, did not object to Ms. Bussey's testimony on the basis that the State did not disclose her as a witness. Although he at one point referred to Ms. Bussey as a "surprise witness," the substance of his objection was that the State did not provide him with a copy of her criminal history. This Court has held that, except for a claim of plain error, an appellant may not raise an argument for the first time on

appeal. *State v. Stembridge*, 9th Dist. Summit No. 23812, 2008-Ohio-1054, ¶ 12. In light of Mr. Jamison's failure to request the exclusion of Ms. Bussey's testimony at trial under Rule 16(I), we decline to address his argument on appeal. We also note that Mr. Jamison has failed to develop a plain error argument, and we decline to create one for him. *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 15.

**{¶11}** Regarding the photocopies of Ms. Bussey's debit cards, Criminal Rule 16(B)(3) provides, in part, that, upon written demand, the prosecution shall provide the defendant with copies of all "books, papers, documents, photographs, [and] tangible objects" that it intends to use as evidence at trial. If the prosecutor does not comply with the rule, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances[.]" Crim.R. 16(L). The court "must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood v. Papdelis*, 32 Ohio St.3d 1 (1987), paragraph two of the syllabus.

**{¶12}** Mr. Jamison argues that the trial court abused its discretion because it did not provide him with any relief under Rule 16(L), even though the State did not provide him with its photocopies of the debit cards until the day of trial. Mr. Jamison argued to the trial court that, in light of the State's delay in providing him with the photographs, it should not be allowed to use them during the trial. The court, instead, offered Mr. Jamison a "short continuance." When Mr. Jamison's counsel indicated that he would need six weeks, the court rejected his request as "excessive." It ended up imposing no sanction for the State's delay. Mr. Jamison argues that the court's inaction deprived him of a fair trial.

{¶13} Mr. Jamison argued that he needed time to subpoena Ms. Bussey's account records so that he could determine what type of account it was. He also wanted to determine whether the language on the back of her cards was significant. The court determined, however, that, in light of the expansive nature of the statutory definition of "credit card[,]" knowing the specific type of account that Ms. Bussey had would not make any difference. It also agreed with the State that any language on the back of the card would likely have been merely generic information about the issuing bank.

{¶14} Upon review of the record, we conclude that the trial court did not abuse its discretion under Criminal Rule 16(L). The court offered Mr. Jamison a "short" continuance to obtain more information about the bank cards, but he rejected it, claiming to need six weeks. The following day the State noted that it had arranged a standby witness from one of the banks, who could testify about Ms. Bussey's account, in less than 24 hours. It explained that Mr. Jamison's lawyer could have accomplished the same thing by issuing a subpoena. In light of Mr. Jamison's refusal to accept the Rule 16(L) relief that the trial court thought was the "least severe sanction that is consistent with the purpose of the rules of discovery," we cannot say that the court deprived Mr. Jamison of a fair trial. *Papdelis*, 32 Ohio St.3d, at paragraph two of the syllabus. Mr. Jamison's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ADMITTED INTO EVIDENCE EXHIBITS THAT VIOLATED THE BEST EVIDENCE RULE.

{¶15} In his third assignment of error, Mr. Jamison argues that the trial court violated the best evidence rule when it admitted photographs of Ms. Bussey's debit cards. The best evidence rule provides that "[t]o prove the content of a writing, recording, or photograph, the

original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio." Evid.R. 1002. We review the trial court's ruling under the best evidence rule for an abuse of discretion. *State v. Moultry*, 9th Dist. Summit No. 25065, 2010-Ohio-3010, ¶ 13.

{¶16} Evidence Rule 1004 creates several exceptions to the Rule 1002. *Scaffidi v. Scaffidi*, 9th Dist. Medina No. 04CA0068-M, 2005-Ohio-4546, ¶ 19. In part, it provides that "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if * * * [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]" Evid.R. 1004(1). At trial, Ms. Bussey testified that her debit cards were returned to her shortly after they were recovered from Mr. Jamison. She cancelled the cards and destroyed one of them for security purposes. There is no indication that Ms. Bussey destroyed the card in bad faith. Due to the good faith destruction of one of the original debit cards, we conclude that the trial court correctly determined that the State could present other evidence to prove the contents of the cards. *See Bank One, N.A. v. Bettinger*, 9th Dist. Summit No. 21371, 2003-Ohio-3311, ¶ 9 (stating that secondary evidence of previously destroyed written assignment should have been admitted to prove the contents of the written assignment).

{¶17} To provide this other evidence, the State offered a photograph of the debit cards and the testimony of Ms. Bussey, who authenticated the photograph. *See* Evid.R. 901(A) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). Nothing in her testimony indicates that the photograph was an inaccurate reproduction of the debit card. Indeed, Mr. Jamison's trial counsel did not elicit any testimony

on cross-examination that called into question the authenticity of either the original debit card or the accuracy of the photograph.

{¶18} Regarding the other debit card, Evidence Rule 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Mr. Jamison argues that the photograph of the card does not qualify as a duplicate because it does not show the back of the card. For the same reason, he argues that it was unfair to admit the photograph. He further argues that it was unfair to admit the photograph of the card because the State knew for months that it had only photographed the front of the card, but failed to inform defense counsel.

{¶19} Upon review of the record, we conclude that Mr. Jamison was not prejudiced by the fact that the State did not photograph the back of the card. The information on the back of the card was not offered by the State to prove its theory of the case and Ms. Bussey's only testimony about the backs of the debit cards was that they listed contact information for the issuing banks. We also note that the photograph of the card was not the only evidence establishing that Mr. Jamison possessed the card. Officer Samples testified that he performed a patdown search during which he found two bank cards issued to Ms. Bussey on Mr. Jamison's person. *See State v. Turner*, 9th Dist. Summit No. 26591, 2013-Ohio-2433, ¶ 25 (finding that even if improperly authenticated exhibits were admitted into evidence, any error would be harmless since witness's testimony addressed the same facts that the exhibits were offered to prove).

{¶20} Because Mr. Jamison has not demonstrated that he was unfairly prejudiced by the fact that there was no photograph of the back of the debit card, we cannot find that the trial court

abused its discretion when it admitted a photograph of the card. Mr. Jamison's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FOUND MR. JAMISON GUILTY OF RECEIVING STOLEN PROPERTY BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

## ASSIGNMENT OF ERROR V

MR. JAMISON'S CONVICTION FOR RECEIVING STOLEN PROPERTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FOUND MR. JAMISON GUILTY OF OPERATING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS BECAUSE THE EVIDENCE WAS INSUFFICIENT SO SUPPORT SUCH FINDINGS.

## ASSIGNMENT OF ERROR VII

MR. JAMISON'S CONVICTION FOR OPERATING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR VIII

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FOUND MR. JAMISON GUILTY OF POSSESSION OF MARIJUANA BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

## ASSIGNMENT OF ERROR IX

MR. JAMISON'S CONVICTION FOR POSSESSION OF MARIJUANA IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} In his fourth through ninth assignments of error, Mr. Jamison challenges the sufficiency of the evidence for each of his three convictions. He also argues that his convictions are against the manifest weight of the evidence.

Sufficiency and Manifest Weight Standards

**{¶22}** Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶23}** If, on the other hand, a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d, at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

Receiving Stolen Property

**{¶24}** Mr. Jamison argues that the State presented insufficient evidence to prove that Ms. Bussey's debit cards satisfied the definition of "[c]redit card" under Revised Code Section 2913.01(U). We limit our analysis to this element of Mr. Jamison's receiving stolen property conviction because it is the only one he has addressed on appeal.

{¶25} Section 2913.51(A) provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Receiving stolen property is a felony of the fifth degree "if the property involved is any of the property listed in section 2913.71 of the Revised Code[.]" R.C. 2913.51(C). Section 2913.71(A) provides in part that "[r]egardless of the value of the property involved * * *, a violation of section * * * 2913.51 of the Revised Code is a felony of the fifth degree if the property involved is * * * a credit card." Credit card is statutorily defined for the purposes of Chapter 2913 as

> includ[ing], but [ ] not limited to, a card, code, device, or other means of access to a customer's account for the purpose of obtaining money, property, labor, or services on credit, or for initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine.

R.C. 2913.01(U).

{¶26} When interpreting provisions of the Revised Code, we are required to read words and phrases in context and construe them "according to the rules of grammar and common usage." R.C. 1.42. In addition, we must "give effect to the words used" and abstain from "insert[ing] words not used." *State ex rel. Cassels v. Dayton City Sch. Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 220 (1994). If we apply these interpretive requirements and conclude that the "statute is plain and unambiguous and conveys a clear and definite meaning," we need not apply other rules of statutory interpretation. *State v. Taylor*, 114 Ohio App.3d 416, 422 (2d Dist.1996).

{¶27} The parties disagree about whether Section 2913.01(U)'s definition of credit card includes debit cards. The Ohio Supreme Court has not addressed this issue, and it is one of first impression in this district. Accordingly, we will look to the other district courts of appeals for guidance. *Mattia v. Hall*, 9th Dist. Summit No. 23778, 2008-Ohio-180, ¶ 11.

**{¶28}** In reviewing our sister districts' resolution of this issue, we find particularly compelling guidance from the Third District's opinion in *State v. Baumle*, 3d Dist. Paulding No. 11-14-06, 2015-Ohio-220. In *Baumle*, the court addressed this issue and concluded that Section 2913.01(U)'s definition of credit card includes debit cards. *Id*. at ¶ 42. In reaching this conclusion, the court emphasized the second half of the definition contained in Section 2913.01(U), which refers to "a card, code, device, or other means of access to a customer's account for the purpose of * * * initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine." (Emphasis omitted.) *Id*. at ¶ 41. Like the Third District, we conclude that this language plainly contemplates debit cards. This renders debit cards subject to the purview of Section 2913.01(U)'s definition and places those who receive stolen debit cards under the ambit of Section 2913.51(A), (C)'s fifth degree felony prohibition against receiving stolen property. *Id*. at ¶ 42.

**{¶29}** We note that every district court of appeals that has examined whether debit cards fall under Section 2913.01(U) has concluded that they do. *See id*. at ¶ 42 (collecting cases). Mr. Jamison has not directed us to any contrary authority. Accordingly, both the weight and persuasiveness of the authority concluding that debit cards satisfy the definition of "[c]redit card" in Section 2913.01(U) convinces us to adopt the same position.

**{¶30}** Ms. Bussey testified that the two cards found on Mr. Jamison's person belonged to her, that they were "debit card[s]," and that they were tied to her accounts with Chase Bank and Ohio Savings Bank. The Chase account was funded from her paychecks while her income tax refunds were deposited into the Ohio Savings Bank account. She used the cards to make purchases, which caused the deduction of the value of the purchases from her accounts. Ms. Bussey also indicated that after she reported the cards missing, three unauthorized purchases

were made on her cards at a Circle K convenience store, which caused the deduction of approximately $125 from her account. Considered in a light most favorable to the State, her testimony supports the jury's finding that Mr. Jamison received a stolen "[c]redit card" as that term is defined in Section 2913.01(U). We, therefore, conclude that there was sufficient evidence to support Jamison's fifth degree felony conviction for receiving stolen property. *Id.* at ¶ 42 (rejecting sufficiency challenge to fifth degree felony conviction for receiving stolen property where evidence showed that the defendant received a debit card).

{¶31} Mr. Jamison's manifest weight argument regarding his receiving stolen property conviction is essentially a restatement of his sufficiency argument. Having rejected his sufficiency argument, we likewise reject his manifest weight argument.

OVI Conviction

{¶32} Mr. Jamison next argues that there was insufficient evidence to support his OVI conviction, noting that Officers Hill and Samples did not directly observe him operating the vehicle. We limit our analysis to the operation element of Mr. Jamison's conviction since it is the only one raised on appeal.

{¶33} The jury found Mr. Jamison guilty of violating Section 4511.19(A)(1)(a), which provides that "[n]o person shall operate any vehicle * * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." For the purposes of that section, operate "means to cause or have caused movement of a vehicle, streetcar, or trackless trolley." R.C. 4511.01(HHH). We have previously recognized that this definition of operate is satisfied where the defendant was "in the driver's position in the front seat of the vehicle with the key in the ignition and the engine running[.]" *State v. Robertson*, 9th Dist. Lorain No. 13CA010395, 2014-Ohio-5389, ¶ 10.

**{¶34}** Both Ms. VanHorn and Ms. Adams testified that they observed Jamison slumped over and sleeping in the driver's seat of his vehicle. Ms. Adams further testified that the left turn signal of Jamison's vehicle was activated when she approached to make contact with Jamison, that the key was in the ignition with the engine running, and that the vehicle was "in gear[.]" Viewed in a light most favorable to the State, we conclude that her testimony provided sufficent evidence to support the jury's finding that Mr. Jamison operated the vehicle. *See id*. at ¶ 4, 10 (affirming trial court's finding that the defendant "operated" the vehicle where witness observed that the defendant was the sole occupant of the vehicle, its engine was running, and the key was in its ignition). Because Mr. Jamison's manifest weight argument essentially just restates his sufficiency argument, we likewise reject it.

Possession of Marijuana Conviction

**{¶35}** Mr. Jamison also argues that there was insufficient evidence to support his possession of marijuana conviction. In particular, he argues that Officer Samples failed to establish his qualifications to identify the substance in the bag found in Mr. Jackson's vehicle as marijuana.

**{¶36}** Revised Code Section 2925.11(A) proscribes individuals from "knowingly obtain[ing], possess[ing], or us[ing] a controlled substance or a controlled substance analog." Section 2925.11(C)(3) further states that "[i]f the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana." Possession of marijuana constitutes a minor misdemeanor if the amount of marijuana possessed is less than 100 grams. R.C. 2925.11(C)(3)(a).

{¶37} "Courts have held that the government may establish the identity of a drug through cumulative circumstantial evidence." (Alteration omitted.) *State v. Montoya*, 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312, ¶ 43. As a result, lay witnesses can "express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *State v. McKee*, 91 Ohio St.3d 292 (2001), syllabus. Thus, to provide the necessary foundational basis, the proponent of the lay testimony must satisfy the requirements for opinion testimony outlined in Evidence Rule 701, which provides as follows:

> If the witness is not testifying as an expert, [his] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of [his] testimony or the determination of fact in issue.

Courts have consistently recognized that police officers may offer opinion testimony as to whether a recovered substance was an illegal drug. *See, e.g., State v. Gonzales*, 6th Dist. Wood No. WD-13-086, 2015-Ohio-461, ¶ 24 (finding that police officers could offer drug identification testimony); *Montoya* at ¶ 44 ("[A] police officer's lay opinion regarding the identity of a substance is admissible based on his or her experience and training."); *State v. Dillard*, 173 Ohio App.3d 373, 2007-Ohio-5651, ¶ 93 (2d Dist.) (finding that police officer could offer lay testimony as to heroin found in hydraulic press).

{¶38} The State offered the testimony of Officer Samples to prove that the substance in the bag recovered from Mr. Jamison's vehicle was marijuana. Officer Samples testified that he has been a police officer for nine years. As to his specific experience with marijuana, the following exchange occurred during Officer Samples' testimony:

Q:     And have you had occasion to stop people with marijuana before?

A:     Absolutely.

Q:     Would you say that it has a very specific odor?

A:     Yes, sir.

* * *

Q:     And describe an odor of marijuana.  What is it that it smells like?

A:     I had an older brother and he used to do it – it's kind of – once you smell it, you know what it is.

* * *

Q:     What do you see as far as appearance goes?

A:     It is a green, leafy, vegetable-like material.

This exchange shows that Officer Samples had professional experience with traffic stops that result in the discovery of marijuana.  He also had personal experience observing marijuana.  Furthermore, Officer Samples was able to describe the distinct smell and appearance of marijuana.  We conclude that this was sufficient to establish Officer Samples' ability to offer a lay opinion as to whether the recovered substance was marijuana.

{¶39} Officer Samples said that he discovered a bag in Mr. Jamison's vehicle that contained a substance matching the description of marijuana.  He further testified that the substance was indeed marijuana.  In light of his testimony, we conclude that there was sufficent evidence in the record to support the trial court's finding that Mr. Jamison possessed marijuana.  Because Mr. Jamison's manifest weight argument merely restates his sufficiency argument, we also reject it.  The jury did not lose its way when it found Mr. Jamison guilty of the offenses.  Mr. Jamison's fourth, fifth, sixth, seventh, eighth, and ninth assignments of error are overruled.

ASSIGNMENT OF ERROR X

THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS DENIED
MR. JAMISON A FAIR TRIAL.

**{¶40}** Mr. Jamison's final assignment of error is that the cumulative effect of the trial court's errors necessitates the reversal of his convictions. "Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial." *State v. Boone*, 9th Dist. Summit No. 26104, 2013-Ohio-2664, ¶ 38, citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. If there were not multiple errors, however, the cumulative error doctrine does not apply. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132. Because this Court did not find multiple instances of error, the cumulative error doctrine does not apply. *State v. Brooks*, 9th Dist. Summit No. 23237, 2007-Ohio-1424, ¶ 40. Mr. Jamison's tenth assignment of error is overruled.

III.

**{¶41}** Mr. Jamison's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, J.
CONCURS.

SCHAFER, J.
CONCURRING IN JUDGMENT ONLY.

{¶42} I concur fully with the majority's resolution of the second through tenth assignments of error. I also agree with the majority's resolution of the first assignment of error on the basis that the trial court's denial of the motion for a bill of particulars did not prejudice Jamison's defense. However, I write separately to address this Court's precedent on the issuance of bills of particulars, which I believe is contrary to the express terms of R.C. 2941.07 and Crim.R. 7(E) as well as the guidance handed down by the Supreme Court of Ohio.

{¶43} R.C. 2941.07 states that "[u]pon written request of the defendant not made later than five days prior to the date set for trial, * * * the prosecuting attorney shall furnish a bill of particulars setting up specifically the nature of the offense charged and the conduct of the defendant which is alleged to constitute the offense." Crim.R. 7(E) contains a similar requirement for a bill of particulars upon the defendant's written request. This language is unambiguous, straightforward, and easy to apply. Its import is that whenever a defendant makes a timely request for an original bill of particulars, the trial court *must* grant his request. The

statutory language leaves no discretion; it mandated that the trial court grant Jamison's motion in this matter.

{¶44} I disagree with the State's argument that a trial court need not order the prosecutor to provide an original bill of particulars whenever the State provides open-file discovery. This argument fails to account for the mandatory language of R.C. 2941.07 and Crim.R. 7(E). These provisions do not provide, "Upon written request of the defendant, the prosecuting attorney shall furnish a bill of particulars, *unless the prosecuting attorney provides open-file discovery*." Instead, they simply require the prosecutor to furnish the bill of particulars whenever the defendant timely requests it. To adopt the State's argument, I would have to read a new clause into R.C. 2941.07 and Crim.R. 7(E) and carve out an exception that the legislative drafters did not include. *See Coleman v. Portage Cty. Engineer*, 133 Ohio St.3d 28, 2012-Ohio-3881, ¶ 23 ("Courts *must abstain* from inserting words into a statute that were not placed there by the General Assembly.") (Emphasis added.). Consequently, I reject the State's invitation to judicially legislate and I support the application of R.C. 2941.07 and Crim.R. 7(E) as they are written, not as the State wants them to be written. *See State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, ¶ 24 ("We have previously cautioned against 'judicial legislation' [that occurs from the addition of words to statutes]."); *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 558, 2000-Ohio-470 ("We defer to the policy decision by the legislature and construe the language that it enacted accordingly.").

{¶45} There is precedent from this Court that supports the State's position, but I believe that this precedent was wrongly decided and should be overturned. *See Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, paragraph one of the syllabus (stating that prior decisions may be overruled if "the decision was wrongly decided at that time"). The first

instance of this Court adopting the State's position was *State v. Eskridge*, 9th Dist. Summit No. 9664 (Aug. 27, 1980). There, the Court found no error in the trial court's denial of a motion for an original bill of particulars and reasoned as follows:

> Counsel for Eskridge did not get a written bill of particulars. All the information was contained in the indictment. In addition, the prosecutor permitted a full examination of his file by defense counsel, thus counsel should know as much about the case as the state. Under *State v. Halleck*, 24 Ohio App.2d 74 ([4th Dist.] 1970), a bill of particulars is not required here. There is no error to this second portion of assignment of error I.

*Id.* at 4.

{¶46} *Eskridge* was wrongly decided for two reasons. First, the Court completely failed to account for the language of R.C. 2941.07 and Crim.R. 7(E). Indeed, the Court did not even refer to those provisions when reaching its decision. And, second, the Court's reliance on *Halleck* was improper since that case implicated the defendant's request for an *amended* bill of particulars. *See Halleck* at 75 (listing the defendant's assignment of error as "[t]he court erred in refusing to grant motion of defendant for an amended or supplemental bill of particulars"). A request for an amended bill of particulars is not subject to the mandatory provisions of R.C. 2941.07 and Crim.R. 7(E), but is rather governed by Crim.R. 7(D), which is discretionary and states that the "[t]he court *may* at any time * * * amend the * * * bill of particulars[.]" (Emphasis added.) *Halleck*, as a result, could not control, or even offer persuasive guidance, to the resolution of the issue implicated in *Eskridge*.

{¶47} These deficiencies in *Eskridge* are not the only reasons that we should cast it aside.[1] In my view, the Supreme Court of Ohio has given this Court clear guidance that

---

[1] In *State v. Brown*, 90 Ohio App.3d 674 (11th Dist.1993), the Eleventh District Court of Appeals rejected the argument that a bill of particulars need not be provided when there is open-file discovery since it "did not agree that such a policy would be sufficient to provide appellant

forecloses the application of *Eskridge* and its progeny. As aptly noted in the majority opinion, *see* Majority Opinion at ¶ 6, the Court has previously explained that "the denial of a timely request for a bill of particulars *should never occur*." (Emphasis added.) *State v. Chinn*, 85 Ohio St.3d 548, 569 (1999). Like the language of R.C. 2941.07 and Crim.R. 7(E), the Supreme Court's guidance leaves this Court no room to insert an exception for cases where the State provides open-file discovery. *See also State v. Peterson*, 46 Ohio St.2d 425, 432 (1976) ("Pursuant to [Crim.R. 7(E)], a bill of particulars must be furnished by the prosecutor upon timely request."); *State v. Petro*, 148 Ohio St. 473 (1947), paragraph two of the syllabus (finding that R.C. 2941.07's forerunner was "a mandatory provision and the overruling of defendant's motion seasonably made to order the prosecuting attorney to furnish such bill of particulars constitutes error"). In light of this guidance, this Court should withdraw its fidelity to any precedent that countenances the trial court's erroneous denial of a timely motion for an original bill of particulars because the defendant was provided open-file discovery. *See State v. Dickens*, 9th Dist. Lorain No. 07CA009218, 2008-Ohio-4404, ¶ 25 ("An appellate court has no authority to overrule decisions of the Ohio Supreme Court but it is bound to follow them.").

{¶48} Finally, I note that I agree with the majority that is unnecessary to explicitly address this Court's precedent in order to resolve Jamison's first assignment of error. Nevertheless, I do believe that the majority's opinion gives a helpful, and necessary, hint to the trial courts of this district that have previously applied the progeny of *Eskridge*: start applying *Chinn* and stop denying timely motions for original bills of particulars merely because the prosecutor gives open-file discovery. While it is difficult to imagine a scenario in which the

---

with notice of the state's actual theory of the case." *Id*. at 682. In reaching this conclusion, the court decided against applying *Eskridge*.

denial of such a motion will result in reversible error, the plain import of *Chinn*, R.C. 2941.07, and Crim.R. 7(E) is that such a denial is improper.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.